Frederick THOMAS, Plaintiff,

v.

ST. LUKE'S HEALTH SYSTEMS, INC.,
St. Luke's Gordon Recovery Center a/k/a
The Gordon Center Ann Jons, Craig
Mansfield, and Steve Middleton, Defen-
dants.

No. C 93–4051.

United States District Court,
N.D. Iowa,
Western Division.

Nov. 21, 1994.

Jeffrey A. Neary of O'Brien, Galvin, Moeller & Neary, Sioux City, IA, for plaintiff.

Maurice B. Nieland and Michael W. Ellwanger of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Sioux City, IA, for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BENNETT, District Judge.

### TABLE OF CONTENTS

I. PROCEDURAL BACKGROUND ................................................. 1423
 A. The Complaint ......................................................... 1424
 1. Lack Of A Federal Question ........................................ 1424
 2. Construction Of A Plausible Federal Claim .., ...................... 1425
 a. A Title VII Claim? ............................................. 1426
 b. A Claim Under 42 U.S.C. § 1981? ............................... 1426
 B. The Motion For Summary Judgment ..................................... 1427
II. STANDARDS FOR SUMMARY JUDGMENT ...................................... 1429

III. FINDINGS OF FACT ....................................................... 1431
 A. Undisputed Facts ...................................................... 1431
 B. Disputed Facts ........................................................ 1431

IV. LEGAL ANALYSIS ......................................................... 1432
 A. The § 1981 Claim Of Race Discrimination ............................... 1432
 1. Elements Of A § 1981 Claim ....................................... 1432

 2. *The Analytical Framework For Thomas's § 1981 Claims* ........................*1433*
 3. *The Prima Facie Case* ...........................................................*1434*
 4. *Legitimate, Non-discriminatory Reason And Pretext* ...........................*1435*
 5. *Thomas's Discrimination Claims Under § 1981* .............................*1435*
 B. *Claims Under Iowa Code Ch. 216* ...........................................*1436*
 C. *Breach Of Covenant Of Good Faith* ........................................*1437*
 D. *Intentional Infliction Of Emotional Distress* .................................*1438*
 1. *Tort Claims And Iowa Code Ch. 216* ......................................*1438*
 2. *Elements Of The Tort* ....................................................*1439*
 3. *The Outrageousness Of Defendant's Conduct*................................*1439*
 E. *The Defamation Claim* ......................................................*1441*
 1. *Defamation And Defamation "Per Se"*.....................................*1441*
 2. *Qualified Privilege* ......................................................*1442*
 3. *Defendants' Grounds For Summary Judgment* .............................*1444*

V. *CONCLUSION* ..............................................................*1445*

Defendants, a substance abuse treatment and rehabilitation center and some of its managerial personnel and the center's corporate parent, have moved for summary judgment on a former employee's claims of constructive discharge and disparate treatment race discrimination and pendant state law claims of race discrimination, breach of covenant of good faith and fair dealing, intentional infliction of emotional distress, and defamation. The former employee's claims arise out of the defendants' alleged responses to accusations by patients that the former employee had been under the influence of cocaine while on the job. Those responses included initial demands that the former employee submit to a urinalysis, which were later withdrawn, and allegedly pressuring the former employee to take a different job with the rehabilitation center. The corporate parent of the rehabilitation center has moved for summary judgment on the ground that it was not an employer of the plaintiff. The other defendants have moved for summary judgment on the grounds that the employee cannot make any showing of race discrimination, that Iowa has never recognized a covenant of good faith and fair dealing in employment situations, that the employee has not alleged any conduct on the part of defendants that is sufficiently outrageous to support a claim of intentional infliction of emotional distress, and that defendants have good defenses of truth and qualified privilege to the employee's defamation claim on which there is no genuine issue of material fact.

## I. PROCEDURAL BACKGROUND

Plaintiff Frederick Thomas, who is Afro–American, filed his complaint in this matter on May 20, 1993, alleging constructive discharge and disparate treatment race discrimination and various state-law statutory and tort claims. Defendants are St. Luke's Health Systems, Inc., St. Luke's Gordon Recovery Center a/k/a The Gordon Center (the Gordon Center or the Center), which is a substance abuse treatment and rehabilitation center, Ann Jons, the former manager of adult in-patient programs at the Center, Craig Mansfield, a therapist at the Center, and Steve Middleton, the director of adult services at the Center. Thomas's allegations, which are discussed in more detail below, included constructive discharge and disparate treatment race discrimination, race discrimination in violation of the Iowa Civil Rights Act, Iowa Code Ch. 601A (now Iowa Code Ch. 216), breach of covenant of good faith and fair dealing, intentional infliction of emotional distress, and defamation. Thomas asserts that the actions of the defendants resulted in his constructive discharge from his employment as a rehabilitation technician with the Center on July 2, 1992. On February 4, 1992, Thomas filed a complaint with the Iowa Civil Rights Commission alleging unlawful employment discrimination against the defendants. Thomas's charge was referred to the Equal Employment Opportunity Commission, although nowhere in the record is it clear what, if any, action the EEOC took on the complaint. Thomas sought and received a "right to sue" letter from the Iowa Civil Rights Commission. This lawsuit followed.

Defendants answered Thomas's complaint on June 10, 1993, asserting denials of factual

allegations, but no affirmative defenses. In the parties' scheduling report of August 26, 1993, the parties anticipated filing amendments and adding parties, and the scheduling order established a deadline of January 1, 1994, for those pleadings. That deadline was later extended to February 1, 1994, but no amendments or motions to amend have ever been filed by either party. However, the original deadline of April 1, 1994, for the filing of dispositive motions was twice extended, first to June 1, 1994, then to accommodate defendants' present motion for summary judgment filed on October 21, 1994. Trial has been set in this matter for December 5, 1994, since entry of a scheduling order on July 14, 1994. However, in their eleventh hour motion for summary judgment, defendants have moved for judgment in their favor on all of Thomas's claims. Unfortunately, there is precious little time to resolve the important issues raised by the summary judgment motion in the very short period of time between the filing of the motion for summary judgment and trial. This is an excellent example of the conundrum created by allowing parties to move for summary judgment well past the initial deadline for doing so and on the eve of trial. Counsel for both parties have invested some effort in advancing and resisting summary judgment. This has necessarily consumed considerable time, effort, energy, and attorney fees. In similar circumstances, this court recently remarked:

> In [one] sense, it would be unfair to the parties not to rule on the motion or to artfully dodge it because of the time crunch. Additionally, meritorious summary judgment motions advance important judicial resource concerns by eliminating trials when they are unnecessary. On the other hand, hurriedly addressing last minute summary judgment motions rob the court of the time necessary to carefully evaluate, analyze and cogitate—sometimes necessary even when difficult issues are . . . presented.

*Holmes v. Marriott Corp.*, 831 F.Supp. 691, 696 (S.D.Iowa 1993). Neither party has requested a hearing, and in view of the imminent trial date, the court finds that the matter is fully submitted and is prepared to enter its disposition of the motion. The court has done the best it could to resolve the issues raised in defendants' motion for summary judgment given the crushing time constraints.

## A. The Complaint

The complaint in this matter is not a model of artful pleading. The only numbered counts state causes of action under Iowa statutory or common law, but no federal cause of action upon which to base federal jurisdiction. The complaint begins with identification of the parties, a jurisdictional statement, and "substantive allegations," found in paragraphs 9 through 17, with a jury demand in paragraph 18, and a prayer for relief including injunctions, payment of medical bills, emotional damages, attorney fees, punitive damages, liquidated damages, front and back pay, and such other relief as the court deems appropriate. The "substantive allegations" suggest claims of constructive discharge and disparate treatment on the basis of race.

In the numbered counts of the complaint, Thomas asserts four causes of action under state law. First, Count I alleges discrimination, apparently on the basis of race, in violation of the Iowa Civil Rights Act, Iowa Code Ch. 601A (1991) (now Iowa Code Ch. 216 (1993)), based on the general allegations with which Thomas's complaint begins. Count II alleges breach of covenant of good faith, again based on the general allegations with which the complaint begins. Count III alleges common-law intentional infliction of "stress," and Count IV alleges common-law defamation, both on the basis of the "substantive allegations."

### 1. Lack Of A Federal Question

■ A federal court, as a court of limited jurisdiction, has a duty to assure itself that it has subject matter jurisdiction in each case. *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987). Nowhere does the complaint in this matter assert a cause of action under a federal statute, the United States Constitution, or its amendments. Failure to plead federal jurisdiction is fatal, *see, e.g., Dep't of Rec. & Sports of Puerto*

*Rico v. World Boxing Ass'n,* 942 F.2d 84, 90 (1st Cir.1991) (instructing district court to dismiss complaint for want of jurisdiction for failure to plead subject matter jurisdiction in the complaint); *Fed.R.Civ.P.* 8(a)(1) (requiring a "short and plaint statement of the grounds upon which the court's jurisdiction depends"), and plaintiff's pleading here is at best problematical. In the jurisdictional statement, Thomas invokes federal court jurisdiction under "Title 28 USC § 343 and Title 42 USC § 1981," and asserts that the amount in controversy exceeds $50,000.00. There is no § 343 in Title 28 of the United States Code! The court believes that when Thomas identified 28 U.S.C. § 343 in his jurisdictional statement, he intended to identify 28 U.S.C. § 1343. That jurisdictional statute is inapposite, however, because it confers jurisdiction only for causes of action not present here, including conspiracy described in 42 U.S.C. § 1985, deprivation of rights under color of law, and protection of civil rights, including the right to vote.

Claims under 42 U.S.C. § 1981 require invocation of federal question jurisdiction under 28 U.S.C. § 1331. *See, e.g., Cabell v. Chavez–Salido,* 454 U.S. 432, 434 n. 4, 102 S.Ct. 735, 737, 70 L.Ed.2d 677 (1982) (district court correctly concluded plaintiffs stated a claim under 42 U.S.C. § 1981, with jurisdiction in the federal district court under 28 U.S.C. § 1331); *Envirotech Sanitary Systems, Inc. v. Shoener,* 745 F.Supp. 271, 273 (M.D.Pa.1990) ("the statute only fulfills a procedural or remedial role. Therefore, a party seeking to assert a § [1981] claim in a federal court must point to a separate jurisdiction-conferring statute."). By its terms, 42 U.S.C. § 1981 provides for a cause of action for deprivation of "the full and equal benefit of the laws and proceedings for the security of persons and properties." 42 U.S.C. § 1981(a). It does not, by itself, confer federal jurisdiction. Thomas has therefore failed to meet his burden to plead federal question jurisdiction. *Fed.R.Civ.P.* 8(a).

■■■■ Nonetheless, the parties have proceeded throughout this case on the assumption that a federal question case had been presented for race discrimination. The parties have argued that case as though it were one for violation of the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. However, "the cases are legion holding that a party may not waive a defect in subject-matter jurisdiction or invoke federal jurisdiction simply by consent." *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 26, 109 S.Ct. 2273, 2288, 105 L.Ed.2d 1 (1989) (Stevens, J., concurring) (citing *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 377, n. 21, 98 S.Ct. 2396, 2404 n. 21, 57 L.Ed.2d 274 (1978); *Sosna v. Iowa,* 419 U.S. 393, 398, 95 S.Ct. 553, 556–557, 42 L.Ed.2d 532 (1975); *California v. LaRue,* 409 U.S. 109, 112, n. 3, 93 S.Ct. 390, 394 n. 3, 34 L.Ed.2d 342 (1972); *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17–18, and n. 17, 71 S.Ct. 534, 541–542 & n. 17, 95 L.Ed. 702 (1951); *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934); *Jackson v. Ashton,* 8 Pet. 148, 149 [33 U.S. 148] 8 L.Ed. 898 (1834)); *Pacific Nat'l Ins. Co. v. Transport Ins. Co.,* 341 F.2d 514, 516 (8th Cir.), *cert. denied,* 381 U.S. 912, 85 S.Ct. 1536, 14 L.Ed.2d 434 (1965) ("The parties, however, may not confer subject matter jurisdiction upon the federal courts by stipulation, and lack of subject matter jurisdiction cannot be waived by the parties or ignored by the court."); *Lawrence County v. South Dakota,* 668 F.2d 27, 29 (8th Cir.1982) ("[F]ederal courts operate within jurisdictional constraints and ... parties by their consent cannot confer subject matter jurisdiction upon the federal courts."). The federal courts have a duty to examine the substantiality of the federal claim throughout the litigation, and must dismiss all claims if the federal claim proves patently meritless even after the trial begins. *Pioneer Hi–Bred Int'l. v. Holden Found. Seeds, Inc.,* 35 F.3d 1226, 1242 (8th Cir.1994); *Sanders,* 823 F.2d at 216. The court therefore concludes that this matter must be dismissed for want of a federal question. Alternatively, the court reaches the merits of defendants' motion for summary judgment and also concludes that Thomas's complaint should be dismissed.

### 2. Construction Of A Plausible Federal Claim

■■■ The court reaches the merits of the motion for summary judgment, because the

Eighth Circuit Court of Appeals has very recently cautioned that "subject matter jurisdiction should not be used to dismiss a case containing even a remotely plausible federal claim if the parties and the courts have already made [a] vast expenditure of resources." *Id.* Thus, in the interest of judicial economy and in light of the investment of resources of the parties, the court will, in the alternative, consider whether Thomas's complaint can be construed as an inartful attempt to assert a plausible federal claim under Title VII, the theory on which the parties have assumed his discrimination claims were based, or a claim under 42 U.S.C. § 1981. Because the parties have proceeded on the assumption that a federal question was present, and, as will be explained more fully below, the analyses of claims under 42 U.S.C. § 1981 and Title VII are similar, no party will now be prejudiced by the court's construction of a plausible federal claim from the pleadings.

### a. A Title VII Claim?

■ Title VII prohibits discrimination in employment, *inter alia*, on the basis of race. 42 U.S.C. § 2000e–2(a). However, Title VII establishes an administrative procedure which a complaining employee must follow before filing a lawsuit in federal court. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir.1994). Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts. *Patterson v. McLean Credit Union*, 491 U.S. 164, 180–81, 109 S.Ct. 2363, 2374–2375, 105 L.Ed.2d 132 (1989); *Little Rock Mun. Water Works*, 21 F.3d at 222. Title VII also requires that the EEOC allow for initial consideration of discrimination claims in state proceedings by requiring that the EEOC not process a charge of discrimination until the state remedy has been invoked and 60 days have passed, or until state proceedings have terminated. 42 U.S.C. § 2000e–5(b); *Swenson v. Management Re-*

*cruiters Int'l, Inc.*, 858 F.2d 1304, 1307 (8th Cir.1988).

> To exhaust administrative remedies an individual must: (1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue. 42 U.S.C. § 2000e–5(b), (c), (e). Once an individual receives notice of the right to sue, [he or] she has 90 days in which to file suit. 42 U.S.C. § 2000e–5(f)(1).

*Little Rock Mun. Water Works*, 21 F.3d at 222. In *Little Rock Mun. Water Works*, the court found that the plaintiff had failed to file her lawsuit within 90 days of receiving notice of the right to sue, and therefore her federal lawsuit was barred by statute. *Id.*

■ In the present case, Thomas has alleged only that the Iowa Civil Rights Commission referred his complaint to the EEOC. He alleges that he received a right-to-sue notice from the Iowa Civil Rights Commission, but not such a notice from the EEOC. Thomas has therefore failed to plead the procedural prerequisites for a federal lawsuit under Title VII. The court cannot construe a plausible claim under Title VII to establish federal question jurisdiction over this lawsuit.

### b. A Claim Under 42 U.S.C. § 1981?

The "substantive allegations" and citation of 42 U.S.C. § 1981 in the jurisdictional statement could be construed as a woefully inartful attempt to state a federal cause of action upon which to base subject matter in this case. The court concludes that a federal cause of action under 42 U.S.C. § 1981 is a more plausible claim than one under Title VII in light of the procedural and pleading flaws identified in the preceding section that block Thomas's assertion of a claim under Title VII.

■ The court must therefore consider whether Thomas may pursue his claim of constructive discharge and disparate treatment in employment on the basis of race under 42 U.S.C. § 1981. In *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the United States Supreme Court concluded that § 1981 cannot be the basis for a claim for

racial discrimination in the employment relationship. *Patterson,* 491 U.S. at 182, 109 S.Ct. at 2375. The Court held that § 1981 is limited to claims involving "a refusal to enter into an employment contract on the basis of race." *Id.* Thus, after *Patterson,* § 1981 "extend[ed] only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment." *Id.* at 176, 109 S.Ct. at 2372; *Williams v. KETV Television, Inc.,* 26 F.3d 1439, 1444 (8th Cir.1994). The Eighth Circuit Court of Appeals followed *Patterson* by holding that racially-discriminatory-discharge claims may not be brought under § 1981. *Taggart v. Jefferson County Child Support Enforcement Unit,* 935 F.2d 947, 948 (8th Cir.1991) *(en banc); see also Valdez v. Mercy Hosp.,* 961 F.2d 1401, 1403–04 (8th Cir.1992) (citing *Taggart* ); *Hicks v. Brown Group, Inc.,* 952 F.2d 991, 992 (8th Cir.1991) (citing *Taggart* ), *rev'd on other grounds and remanded,* —— U.S. ——, 112 S.Ct. 1255, 117 L.Ed.2d 485 (1992). However, effective November 21, 1991, that portion of *Patterson* relied on in *Taggart* was statutorily overruled by the Civil Rights Act of 1991, by redefining the terms "make and enforce contracts" to include termination of contracts.[1] 42 U.S.C. § 1981(b); *Hicks v. Brown Group, Inc.,* 982 F.2d 295, 296 (8th Cir.1992) *(en banc), cert. denied,* —— U.S. ——, 114 S.Ct. 1642, 128 L.Ed.2d 363 (U.S.1994); *Valdez,* 961 F.2d at 1404; *Fray v. Omaha World Herald Co.,* 960 F.2d 1370, 1373 (8th Cir. 1992). The 1991 amendment to 42 U.S.C. § 1981 therefore applies to discharges occurring after November 21, 1991. *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 381 (8th Cir.1994) (amendment will not be applied retroactively, citing *Fray,* 960 F.2d at 1378); *Williams,* 26 F.3d at 1444; *Fray,* 960 F.2d at 1378 (amendment does not apply retroactively). Thomas's cause of action for constructive discharge and disparate treatment during the course of his employment on the basis of race is cognizable under § 1981, because he alleges only acts and discharge occurring after November 21, 1991. Therefore, as an alternative to its holding that this case should be dismissed for want of a federal question, the court will reach the merits of Thomas's claims and defendants' motion for summary judgment.

## B. The Motion For Summary Judgment

Defendants have moved for summary judgment in their favor on all of Thomas's claims. Defendant St. Luke's Health Systems, Inc., has moved for summary judgment in its favor on the ground that it is a separate corporation from its subsidiary, the Center, and therefore never was Thomas's employer. Thomas has not challenged this ground for summary judgment.

The remaining defendants have moved for summary judgment on Thomas's state and purported federal discrimination claims on the ground that Thomas has made no showing of intentional discrimination to sustain the claims, and no showing of adverse treatment at all. They argue that rather than creating an intolerable atmosphere resulting in constructive discharge, they in fact offered Thomas a promotion, and did not "pressure" him to take that or any other less attractive position. They also argue that there were no adverse consequences to Thomas as the result of allegations by patients that Thomas had been under the influence of cocaine while on the job at the Center. They argue that far from being terminated, as was a white person who relapsed into alcoholism, Thomas was allowed to keep his job without any further consequences. Thomas argues that he has presented a *prima facie* case of discrimination and that there is a genuine issue of material fact as to whether he was subjected to an intolerable atmosphere and disparate treatment.

Defendants have moved for summary judgment in their favor on Thomas's claim of breach of covenant of good faith on the

---

1. Section 101(2)(b) of the Act of 1991 amended 42 U.S.C. § 1981 to include the following language:

 For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
 Civil Rights Act of 1991, § 101(2)(b) (text of S. 1745 as approved by House and Senate Nov. 7, 1991).

ground that the Iowa Supreme Court has specifically rejected such a cause of action in the employment context, citing *Fogel v. Trustees of Iowa College,* 446 N.W.2d 451, 457 (Iowa 1989). Thomas does not appear to challenge this ground for summary judgment.

Defendants have also moved for summary judgment in their favor on Thomas's claim of intentional infliction of emotional distress on the ground that none of the conduct alleged is sufficiently outrageous to sustain the tort claim. Thomas appears to argue that there is a genuine issue of material fact as to whether or not the conduct he has alleged, whether discriminatory or not, was so outrageous as to sustain this cause of action.

Finally, defendants have moved for summary judgment in their favor on Thomas's claim of defamation on the ground that they have good and valid affirmative defenses of truth and qualified privilege on which there is no genuine issue of material fact. They argue that defendants communicated truthful statements that *patients* had alleged that Thomas had been using cocaine, and that they made these communications only to properly interested persons. They therefore argue that they are entitled to judgment as a matter of law on this claim. Thomas appears to argue that there is a genuine issue of material fact precluding summary judgment on this claim. Thomas's argument, so far as the court can understand it from Thomas's affidavit, as his brief sheds no light, is that defendants violated any qualified privilege because they breached confidentiality concerning allegations of Thomas's cocaine use, and that the allegations became common knowledge within the Center among staff and patients, and within the greater St. Luke's system.

 The court notes that defendants' assertion of these affirmative defenses to the defamation claim is procedurally inadequate. Qualified privilege to a defamation claim is an affirmative defense that Iowa law expressly states must be pleaded. *Vinson v. Linn–Mar Community Sch. Dist.,* 360 N.W.2d 108,

116 (Iowa 1984); *Higgins v. Gordon Jewelry Corp.,* 433 N.W.2d 306, 311 (Iowa App.1988) (quoting *Vinson* ). Under Iowa law, an affirmative defense is one which rests on facts not necessary to support the plaintiff's case. *Erickson v. Wright Welding Supply, Inc.,* 485 N.W.2d 82, 85–86 (Iowa 1992); *Knauss v. City of Des Moines,* 357 N.W.2d 573, 576 (Iowa 1984); *Peoples ·Trust & Sav. Bank v. Baird,* 346 N.W.2d 1, 4 (Iowa 1984); *Baker v. Beal,* 225 N.W.2d 106 (Iowa 1975). Any defense which would avoid liability although admitting the allegations of the petition is an affirmative defense. *Erickson,* 485 N.W.2d at 86 (citing 1 B. Lindahl *Iowa Practice* § 13.39 (1991)).

 Defendants have not pleaded these or any other affirmative defenses. Such failure to plead an affirmative defense ordinarily results in waiver of the defense.[2] *See, e.g., Erickson,* 485 N.W.2d at 85–86 (although defendant would ordinarily have waived an affirmative defense not pleaded on the basis of Iowa Rules of Civil Procedure 72, 101, and 104, a defense under Iowa Code § 613.18 was not such an affirmative defense, and was not waived); *Jacobs Mfg. Co. v. Sam Brown Co.,* 19 F.3d 1259, 1266 (8th Cir.1994) (applying Missouri law, and holding that failure to plead affirmative defense of estoppel waived that defense), *cert. denied,* — U.S. ——, 115 S.Ct. 487, 130 L.Ed.2d 399 (1994); *Bissett v. Burlington Northern R.R. Co.,* 969 F.2d 727, 731 (8th Cir.1992) (failure to plead affirmative defense results in waiver of the defense and its exclusion from the case, citing *Sayre v. Musicland Group, Inc.,* 850 F.2d 350, 354 (8th Cir.1988)); *Piekarski v. Home Owners Sav. Bank, F.S.B.,* 956 F.2d 1484, 1489 (8th Cir.1992) (under Minnesota rules of procedure, failure to plead an affirmative defense constitutes waiver of the defense), *cert. denied,* —— U.S. ——, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992); *but see Northwest Airlines, Inc. v. Federal Ins. Co.,* 32 F.3d 349, 357 (8th Cir.1994) (citing *Continental Ins. Co. v. Bergquist,* 400 N.W.2d 199 (Minn.Ct.App.1987), for the proposition that even where insurer failed adequately to plead

---

**2.** The court notes that defendants' answer does deny Thomas's assertions that the allegedly defamatory statements made about his cocaine use were untrue. This constructive pleading of truth may be sufficient to preserve the affirmative defense of truth.

the affirmative defense of insured's injury before policy became effective, court could entertain that defense because insurance policy cannot be extended by waiver, nor can liability be imposed on an insurer for risks not specifically undertaken). However, the court concludes that to hold that defendants had waived their affirmative defenses of truth and qualified privilege here is inappropriate because "such a literal interpretation places form over substance." *Costello, Porter, Hill, Heisterkamp & Bushnell v. Providers Fidelity Life Ins. Co.,* 958 F.2d 836, 837–838 (8th Cir.1992) (footnotes omitted). Defendants would likely seek to amend their answer to add these defenses before trial. The court considers that disposition of the issues now on the merits will serve judicial economy. Furthermore, Thomas has never raised an objection to assertion of these affirmative defenses even though they have not been properly pleaded. Thomas cannot credibly claim prejudice if the court now reaches those affirmative defenses on their merits, which is the basis on which Thomas has challenged them. The court will therefore construe defendants' presentation of the affirmative defenses in their motion for summary judgment as pleading of the affirmative defenses. To hold "otherwise exalts form over substance—technicality over reality." *U.S. v. Caldwell,* 954 F.2d 496 (8th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992). The court wishes to make clear, however, that far the better course is properly to plead affirmative defenses in an answer or timely amendment to an answer as required, or affirmative defenses may be waived.

The court has been required to construe both the pleadings of the plaintiff and of the defendants in this case in order to do substantial justice among the parties. The parties are cautioned that in the future the failure to plead federal question jurisdiction by a plaintiff may result in outright dismissal of all of plaintiff's claims. Likewise, the failure of a defendant to plead affirmative defenses in an answer may result in waiver of those defenses. Having construed the submissions of the parties to state a federal claim and affirmative defenses, the court now turns to disposition of the defendants' motion for summary judgment on the merits.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992).

The standard for granting summary judgment is well established. *Rule 56* of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986); *Munz v. Michael,* 28

F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.*, 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone*, 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini*, 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[3] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Thomas, and give Thomas the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael*, 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.*, 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield*, 939 F.2d 666, 667 (8th Cir.1991), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

██ Procedurally, the moving parties, defendants here, bear "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–2553); *see also Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir.1993). The defendants are not required by *Rule* 56 to support their motion with affidavits or other similar materials negating the opponent's claim. *Id.*

██ "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Thomas is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick*, 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994).

██ In *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11, *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2553, and *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552). If Thomas fails to make a sufficient showing of an essential element of a claim with respect to which he has the burden of proof,

**3.** An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hartnagel*, 953 F.2d at 394.

then defendants are "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Woodsmith*, 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Burk*, 948 F.2d at 492; *Woodsmith*, 904 F.2d at 1247. With these standards in mind, the court turns to consideration of the defendants' motion for summary judgment.

### III. FINDINGS OF FACT

#### A. Undisputed Facts

The record reveals that the following facts are undisputed. Thomas was employed at the Center in Sioux City, Iowa, from March 9, 1991, until July 2, 1992. Thomas was a rehabilitation technician at the Center. On January 30, 1992, several patients who had attended a lecture given by Thomas earlier that day reported to Center therapist Craig Mansfield that they believed that Thomas had been using cocaine prior to the lecture. Craig Mansfield reported these allegations to Steve Middleton, the director of adult services at the Center. Mansfield told Middleton about the allegations in the presence of Kevin Beauvais, the director of program effectiveness for the Center. Also in the area at this time were two other employees of the Center, although they were involved in other tasks.

Middleton instructed Mansfield to repeat the report to Ann Jons, the manager of adult in-patient programs at the Center at the time, because she was Thomas's direct supervisor. Middleton also advised his immediate supervisor, Dr. Clifford G. Millard, vice president of psychological and clinical services, about the patients' allegations. Thomas was unavailable at the time, and was not scheduled to work again until February 3, 1992. On the morning of February 3, 1992, Middleton met with patients to confirm the nature of their allegations about Thomas. Middleton then met with Jons and Millard to consider a course of action. They reviewed Center policies, then determined that, in light of Thomas's former drug addiction, and

the business of the Center, they would ask Thomas for a urine sample for drug testing.

Later that day, Middleton and Jons met with Thomas in Jons's office. They discussed the accusations, which Thomas vehemently denied. Middleton and Jons then requested a urine sample, and called a doctor at St. Luke's to authorize a urinalysis. Middleton and Jons also requested or insisted that Thomas meet with an Employee Assistance Program counselor, which Thomas maintained was unnecessary. Before the meeting ended, Dr. Millard telephoned Jons's office. He had consulted with St. Luke's personnel department employees, and had concluded that a urinalysis was inappropriate. He instructed Jons and Middleton to cancel the urinalysis. Thomas became agitated at cancellation of the test, and demanded that it be performed.

Thomas then had a meeting with Dr. Millard and Middleton in which he again insisted on a urinalysis. Dr. Millard and Middleton told Thomas that no test was necessary, and that they would take no further action. Plaintiff then left the Center and told two other people, Dr. Dale Wassmuth and Jim Wigton, that he had been accused of drug use and denied a urinalysis to clear himself. He attempted, unsuccessfully, to arrange a urinalysis himself.

Subsequently, a paraprofessional position in the intake department of the Center became available. An employee in that department, Lori Milda, suggested to the department director, Kevin Beauvais, that Thomas be considered for the position. Beauvais authorized Milda to discuss the position with Thomas. All of the persons who provided affidavits as part of the record for this summary judgment motion who discussed this position, with the exception of Thomas, stated their belief that the position would have been a promotion for Thomas. Thomas refused to be considered for the job. On July 2, 1992, Thomas terminated his employment with the Center.

#### B. Disputed Facts

Thomas asserts that there are a number of genuine issues of material fact. Thomas has presented various affidavits of former employees of the Gordon Center which suggest

that the atmosphere at the Center was tense and that the managerial personnel against whom Thomas has brought this suit were difficult to work with. Thomas also asserts that he was "pressured" to take the job in the intake department in an effort to remove him from contact with Center personnel and patients and eventually to shift him out of the Center entirely. Thomas asserts that his personal relationships with his supervisors deteriorated after the incidents of January 30, 1992, through February 3, 1992. He also asserts that rumors about his alleged drug use became rampant within the Center and the greater St. Luke's system as the result of unauthorized publication of the allegations in breach of the appropriate standard of confidentiality, thus ruining his reputation as a rehabilitation technician and recovered addict.

Thomas asserts that he was mistreated on the basis of his race, and treated less favorably than certain named white males, one of whom allegedly had sexually transmitted diseases and was accused of growing marijuana in his home. Defendants deny that the situations were comparable, but refuse to reveal factual information on the grounds of confidentiality. Defendants also assert that a white male alcoholic was fired for relapsing, but that Thomas was never subjected to any disciplinary measures whatsoever as the result of the allegations by patients that he had been using drugs.

## IV. LEGAL ANALYSIS

■■■ The court will consider each of Thomas's claims, and the grounds defendants assert for summary judgment in their favor on those claims seriatim. However, as an initial matter, the court concludes that the motion for summary judgment on all claims by defendant St. Luke's Health Systems, Inc., must be granted. St. Luke's Health Systems, Inc., maintains that it is a separate corporation from the Gordon Center, which is one of several subsidiaries under its umbrella. St. Luke's Health Systems, Inc., maintains that it is not, and never was, Thomas's employer. Thomas has not challenged this ground for summary judgment. Thomas has therefore failed to generate a

genuine issue of material fact because he has not by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designated "specific facts showing that there is a genuine issue for trial," *Fed. R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553, to show that St. Luke's Health Systems, Inc., was indeed his employer. On the basis of the record as it now stands, the court concludes that no reasonable trier of fact could return a verdict for Thomas against St. Luke's Health Systems, Inc. Thus, summary judgment should be granted in favor of St. Luke's Health Systems, Inc., and it must be dismissed from this action. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247.

### A. The § 1981 Claim Of Race Discrimination

The court concluded above in section I.A., beginning at page 6, that Thomas's discrimination claims must be construed to be claims under 42 U.S.C. § 1981, and that his claims of constructive discharge and disparate treatment are cognizable as claims under § 1981 because they arose after amendment of § 1981 by the 1991 Civil Rights Act. The court therefore turns to the elements of such a claim and the proper analytical framework for the court's consideration of it.

#### 1. Elements Of A § 1981 Claim

■■■ To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.). *Green v. State Bar of Texas,* 27 F.3d 1083, 1086 (5th Cir.1994); *Mian v. Donaldson Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993). Section 1981 requires proof of intentional discrimination, *Durham v. Xerox Corp.,* 18 F.3d 836, 839 (10th Cir.1994) (only intentional discrimination violates § 1981); *Hispanic Taco Vendors of Wash. v. City of Pasco,* 994 F.2d 676,

679 n. 3 (9th Cir.1993); *Von Zuckerstein,* 984 F.2d at 1472, as does a disparate treatment claim under Title VII. *Lanear v. Safeway Grocery,* 843 F.2d 298, 300 (8th Cir.1988). Therefore, the elements of § 1981 claims and Title VII disparate treatment claims are the same. *Anderson,* 26 F.3d at 1284 n. 7; *Von Zuckerstein v. Argonne Nat'l Lab.,* 984 F.2d 1467, 1472 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 419, 126 L.Ed.2d 365 (1993); *Hicks,* 970 F.2d at 491.

The activities enumerated in the statute that Thomas asserts have been violated here involve the performance and termination of his employment. Thomas asserts that he was subjected to disparate treatment on the basis of race in the course of his employment leading to his constructive discharge. A constructive discharge exists when an employer deliberately renders the employee's working conditions intolerable and thus forces the employee to quit. *Hukkanen v. Int'l Union of Operating Engineers, Hoisting & Portable Local No. 101,* 3 F.3d 281, 284 (8th Cir.1993) (citing the *"Bunny Bread"* standards for this kind of claim found in *Johnson v. Bunny Bread Co.,* 646 F.2d 1250 (8th Cir.1981)); *Smith v. Cleburne County Hosp.,* 870 F.2d 1375, 1381 (8th Cir.), *cert. denied,* 493 U.S. 847, 110 S.Ct. 142, 107 L.Ed.2d 100 (1989); *Southside Pub. Sch. v. Hill,* 827 F.2d 270, 274 (8th Cir.1987). First, the conditions created by the employer must be such that a reasonable person would find them intolerable. *Hukkanen,* 3 F.3d at 284; *Craft v. Metromedia, Inc.,* 766 F.2d 1205, 1217 (8th Cir.1985), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986); *Bunny Bread,* 646 F.2d at 1256 (8th Cir. 1981). Second, the employer's actions must have been taken with the intention of forcing the employee to quit. *Hukkanen,* 3 F.3d at 284; *Bunny Bread Co.,* 646 F.2d at 1256. If there is no evidence that the defendant took actions with an intent to force the plaintiff to quit, even if conditions were intolerable, plaintiff's claim fails. *Craft,* 766 F.2d at 1217.

The standards in *Bunny Bread* do not mean constructive discharge plaintiffs must prove their employers consciously meant to force them to quit. *Hukkanen,* 3 F.3d at 284. But, when an employer denies a conscious effort to force an employee to resign, the employer must necessarily be held to intend the reasonable foreseeable consequences of its actions. *Hukkanen,* 3 F.3d at 284–85. Constructive discharge plaintiffs may therefore satisfy *Bunny Bread's* intent requirement by showing their resignation was a reasonably foreseeable consequence of their employers' discriminatory actions. *Id.* However, where an employer has attempted to accommodate an employee, the employer has been held not to have constructively discharged the employee. *Cleburne County Hosp.,* 870 F.2d at 1380–81.

### 2. The Analytical Framework For Thomas's § 1981 Claims

The analytical framework for analysis of claims under § 1981 is the same as that for claims of racial discrimination in employment under 42 U.S.C. § 1983 and Title VII. *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, —— n. 1, 113 S.Ct. 2742, 2747 n. 1, 125 L.Ed.2d 407 (1993) (affirming the Eighth Circuit's conclusion on this point in *Hicks v. St. Mary's Honor Ctr.,* 970 F.2d 487, 490 (8th Cir.1992)); *Richmond v. Bd. of Regents of Univ. of Minn.,* 957 F.2d 595, 598 (8th Cir. 1992); *Briggs v. Anderson,* 796 F.2d 1009, 1021 (8th Cir.1986). *See also Durham,* 18 F.3d at 839. Therefore the *McDonnell Douglas* scheme for the allocation of burdens and the order of presentation of proof also applies in § 1981 cases involving discriminatory treatment in employment situations. *See Turnes v. Bank,* 36 F.3d 1057 (11th Cir.1994); *Howard v. BP Oil Co.,* 32 F.3d 520, 524 n. 2 (11th Cir.1994); *Anderson v. Douglas & Lomason Co., Inc.,* 26 F.3d 1277, 1284 n. 7 (5th Cir.1994); *Von Zuckerstein,* 984 F.2d at 1472.

Thomas has presented only indirect evidence in support of his claim of race discrimination. It is axiomatic that employment discrimination need not be proved by direct evidence, and indeed, that doing so is often impossible, because as the Supreme Court has said, "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes." *Gaworski v. ITT Commercial Finance Corp.,* 17 F.3d 1104, 1108 (8th

1434

Cir.) (citing *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)), *cert. denied,* —— U.S. ——, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994). In employment discrimination cases based on circumstantial evidence, courts apply the analytical framework of shifting burdens developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), and most recently in *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *Gaworski,* 17 F.3d at 1108.

 Under *McDonnell Douglas* and its progeny, the employment discrimination plaintiff has the initial burden of establishing a *prima facie* case of discrimination by producing evidence that would entitle him to prevail unless contradicted and overcome by evidence produced by the defendant. *White v. McDonnell Douglas Corp.,* 985 F.2d 434, 435 (8th Cir.1993). If a *prima facie* case is established, the burden then shifts to the employer to rebut the presumption by producing evidence that the employer made the questioned employment decision for a legitimate, non-discriminatory reason. *Id.* The employer's explanation of its actions must be "clear and reasonably specific," *Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096, but the employer's burden of production has nonetheless been held to be "exceedingly light." *Batey v. Stone,* 24 F.3d 1330, 1334 (11th Cir. 1994) (citing *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1019 (11th Cir.1994)). If the employer meets this burden of production, the legal presumption that would justify a judgment as a matter of law based on the plaintiff's *prima facie* case "simply drops out of the picture," and the plaintiff bears the burden of persuading the finder of fact that the proffered reasons are pretextual and that the employment decision was the result of discriminatory intent. *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749. The Supreme Court has made clear that the ultimate inquiry is whether the employer intentionally discriminated against the plaintiff. *Aikens,* 460 U.S. at 715, 103 S.Ct. at 1482; *White v.*

*McDonnell Douglas Corp.,* 985 F.2d 434, 436 (8th Cir.1993). However, if the defendant's proffered reasons are rejected, the trier of fact may infer the ultimate fact of intentional discrimination. *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749 ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").

### 3. *The Prima Facie Case*

 Under the *McDonnell Douglas* analysis, the plaintiff's usual burden to establish a *prima facie* case of employment discrimination is to show that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the job he or she was performing; (3) the plaintiff suffered adverse employment action, or was discharged; (4) a nonmember of the protected class replaced the plaintiff or was not subjected to the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Elliott v. Montgomery Ward & Co.,* 967 F.2d 1258, 1260 (8th Cir.1992). The Supreme Court noted that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie case proof required from [the plaintiff] is not necessarily applicable in every respect in differing factual situations." *Id.* at 802 n. 13, 93 S.Ct. at 1824 n. 13.

 To prove a disparate treatment claim, the plaintiff must show that he was "similarly situated in all relevant respects" to a non-member of the protected class who was more favorably treated. *Lanear,* 843 F.2d at 300 (citing *Smith v. Monsanto,* 770 F.2d 719, 722 (8th Cir.1985), *cert. denied,* 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986)). In order to determine whether a plaintiff has shown that the employees involved were "similarly situated" for purposes of establishing a *prima facie* case, the court considers whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. *Williams v. Ford Motor Co.,* 14 F.3d 1305, 1309 (8th Cir.1994); *Boner v. Bd. of Comm'rs of Little*

*Rock Mun. Water Works,* 674 F.2d 693, 697 (8th Cir.1982). It is not up to the employer to prove dissimilarity. *Lanear,* 843 F.2d at 301 (citing *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94); *Bunny Bread,* 646 F.2d at 1254. Where a plaintiff establishes a *prima facie* case of disparate treatment, if the defendant presents a legitimate, non-discriminatory reason for the disparate treatment, and the plaintiff cannot show that reason was pretextual, the defendant is entitled to summary judgment. *Pierce v. Marsh,* 859 F.2d 601, 603 (8th Cir.1988).

### 4. Legitimate, Non-discriminatory Reason And Pretext

▮ In the second stage of the analysis, if the employer articulates a reason sufficient to rebut a *prima facie* case, the inquiry proceeds to a "new level of specificity." *White v. McDonnell Douglas Corp.,* 985 F.2d 434, 436 (8th Cir.1993) (citing *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094–95). In the third stage of the analytical framework, the plaintiff is entitled to the opportunity to show that the stated reason for the employer's action was "in fact pretext." *Id.* (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825). The plaintiff can show pretext either "by persuading the court that a discriminatory reason more likely motivated the employer or . . . by showing that the employer's proffered explanation is unworthy of credence." *Id.* (citing *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095). "In short, the district court must decide which party's explanation of the employer's motivation it believes." *Id.* (citing *Aikens,* 460 U.S. at 716, 103 S.Ct. at 1482). The sufficiency of evidence to support a factfinder's determination of discrimination was described in *St. Mary's:*

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and . . . [n]o additional proof of discrimination is *required.*

*St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749.

### 5. Thomas's Discrimination Claims Under § 1981

Defendants assert that Thomas cannot meet his *prima facie* showing, because he cannot show any adverse employment action. The adverse employment actions of which Thomas complains are defendants' initial demand for a urinalysis, subsequently withdrawn, and "pressure" to take another job within the Center. The court concludes that neither of these actions rises to the level of an adverse employment action.

▮ Thomas suffered no adverse employment action as the result of the withdrawn request for urinalysis, because it had no impact on his continued employment. Thomas's continued employment was not ultimately made dependent on a favorable result to the urinalysis; the urinalysis became irrelevant when it was withdrawn. Nor was Thomas ever again subjected to a request for a urinalysis. Thomas asserts that the withdrawal of the urinalysis undermined his employment position, because he was unable to exonerate himself. However, the facts are undisputed that Thomas did not suffer any consequences to his employment in the form of demotion, termination, suspension, unusual or humiliating requirements, change of duties, or termination, which could suggest that his position was undermined.

▮ Nor can the court conclude that the offer of another position with the Center was an adverse employment action. The record demonstrates that the position Thomas was encouraged to apply for would have been considered a promotion by persons similarly situated. No consequences flowed from Thomas's refusal to apply for the position, and his application for the other position was not made a condition of his continued employment. The record is devoid of evidence that Thomas was even "pressured" to apply for the position; rather, the record shows that only one person, who considered herself a friend of Thomas's, invited Thomas to apply for the position with the permission of the supervisor over that position. None of the defendants or any of Thomas's superiors

suggested or demanded that Thomas seek the other position. Such modest recruitment can hardly be construed to be "pressure" from defendants.

■ For the same reasons the court concludes that Thomas did not suffer any other adverse employment action, the court also concludes that Thomas did not suffer any working conditions that were so intolerable as to cause his constructive discharge. *Huk-kanen*, 3 F.3d at 284. Neither the demand for or the withdrawal of the request for a urinalysis in these circumstances would be intolerable to a reasonable person, and Thomas has failed to demonstrate any demotion, termination, suspension, unusual or humiliating requirements, change of duties, or termination, following the withdrawal of the request for a urinalysis which would be intolerable to a reasonable person. *Id.; Craft*, 766 F.2d at 1217; *Bunny Bread Co.*, 646 F.2d at 1256. Put simply, because there were no adverse employment actions, there were no intolerable conditions sufficient to cause Thomas's constructive discharge. Thomas makes the general complaint that his working relationship with his superiors deteriorated after the events of January 30 to February 3, 1992, and affidavits of other former employees of the Center indicate that Thomas's superiors were perceived to be difficult to work with. However, friction and unpleasantness in a working relationship, although uncomfortable, do not amount to the employer's deliberately rendering the employee's working conditions intolerable in the circumstances presented here. Finally, there was no intolerable "pressure" placed on Thomas to take a different position that a reasonable person could find caused his constructive discharge.

■ The court also concludes that Thomas has failed to establish a *prima facie* case of disparate treatment because he has failed to generate a genuine issue of material fact that any non-member of his protected class who was allegedly treated more favorably was "similarly situated in all relevant re-

spects." *Lanear*, 843 F.2d at 300. The court has considered whether the employees Thomas has identified were involved in or accused of the same or similar conduct and were disciplined in different ways, more favorable to the non-member of Thomas's class. *Williams*, 14 F.3d at 1309. The court concludes that the former employees Thomas has identified either were not accused of the same or similar conduct,[4] or were treated *less* favorably than was Thomas.[5]

■ In the alternative, the court concludes that even if Thomas did establish a *prima facie* case by establishing adverse employment action in the form of the demand for a urinalysis and withdrawal of that demand, or in the "pressure" to apply for a different position, Thomas has failed to generate a material issue of fact that the non-discriminatory reasons offered by defendants for their actions are unworthy of belief. Specifically, the court concludes that there is no evidence in this record to support a conclusion that defendants discriminated against Thomas or acted with an intent to discriminate, which is an element of each of Thomas's claims, and the ultimate inquiry in a discrimination lawsuit. *Aikens*, 460 U.S. at 715, 103 S.Ct. at 1482; *White v. McDonnell Douglas Corp.*, 985 F.2d 434, 436 (8th Cir.1993). Defendants were confronted with allegations from patients that one of their rehabilitation technicians had been using cocaine. Defendants had legitimate reasons to be concerned about such allegations. They took reasonable steps to investigate those accusations. Following their investigation and discussion of the matter with Thomas, absolutely nothing happened to change Thomas's employment status. Therefore the court cannot conclude that defendants either treated or intended to treat Thomas differently from anyone else on the basis of race, and defendants are therefore entitled to summary judgment on Thomas's § 1981 claims.

### B. Claims Under Iowa Code Ch. 216

■ Neither the defendants nor the plaintiff here have in any way distinguished

---

4. Allegedly growing marijuana at home and giving one's spouse a sexually transmitted disease are not the same as or similar to alleged use of cocaine while on the job.

5. A white male alcoholic accused of relapsing was terminated.

between the discrimination claims brought under § 1981 and the claims brought under Iowa Code Ch. 216, nor does it appear to the court that they have even argued the Chapter 216 claims separately from the discussion of the § 1981 claims. Although the court believes this lack of argument of the discrimination claims under the Iowa statute is the result of oversight rather than design, the court finds that Iowa courts routinely look to federal cases under Title VII for guidance in disposition of discrimination claims under Iowa Code Ch. 216. *See, e.g., Boelman v. Manson State Bank,* 522 .N.W.2d 73, 77 (1994) (recognizing that Iowa court has previously looked to federal cases interpreting Title VII for guidance in applying chapter 601A (now 216)); *Hy–Vee Food Stores, Inc. v. Civil Rights Comm'n,* 453 N.W.2d 512, 516 (1990) (Iowa court borrowed framework of analysis for disparate treatment claim under Iowa Code Ch. 601A from United States Supreme Court cases applying it to Title VII cases in *Hamilton v. First Baptist Elderly Hous. Found.,* 436 N.W.2d 336 (Iowa 1989), and therefore doing the same); *Landals v. George A. Rolfes Co.,* 454 N.W.2d 891, 894 (Iowa 1990) (in the past, the Iowa Supreme Court has applied federal principles and analytical framework to civil rights cases under Iowa Code Ch. 216); *Hulme v. Barrett,* 449 N.W.2d 629, 633 (Iowa 1989) (Iowa court is guided by federal law in analysis of civil rights cases under Iowa Code Ch. 601A); *Annear v. State,* 419 N.W.2d 377, 379 (Iowa 1988) (recognizing that Iowa Code Ch. 601A is patterned after Title VII, and adopting principles found in federal cases under the federal law); *King v. Iowa Civil Rights Comm'n,* 334 N.W.2d 598, 601 (Iowa 1983) (same); *Iowa State Fairgrounds Sec. v. Iowa Civil Rights Comm'n,* 322 N.W.2d 293, 296 (Iowa 1982) (adopting principles stated in federal Title VII disparate treatment cases for analysis of claims under Iowa Code Ch. 601A). Having concluded above that defendants are entitled to summary judgment on Thomas's federal claims of disparate treatment racial discrimination using the framework of analysis applicable to Title VII cases, the court now concludes that defendants are also entitled to summary judgment on Thom-

as's claims of discrimination under Iowa Code Ch. 216.

### C. Breach Of Covenant Of Good Faith

Thomas's state-law claim of breach of covenant of good faith and fair dealing may also be disposed of briefly. Defendants correctly state that the Iowa Supreme Court has never recognized such a cause of action in an employment context. *Porter v. Pioneer Hi–Bred Int'l., Inc.,* 497 N.W.2d 870, 871 (Iowa 1993); *French v. Foods, Inc.,* 495 N.W.2d 768, 771 (Iowa 1993); *Grahek v. Voluntary Hosp. Coop. Ass'n Of Iowa, Inc.,* 473 N.W.2d 31, 34 (Iowa 1991); *Fogel v. Trustees of Iowa Colleges,* 446 N.W.2d 451, 456–57 (Iowa 1989). In *Fogel,* the court found that

> [t]he doctrine stems from the implied duty of good faith and fair dealing recognized in all contracts. *See* Restatement (Second) of Contracts § 205 (1981). Applied in the employment context, an employee proving a prima facie case of unjust termination could shift to the employer the burden of proving good faith as a defense. The classic case invoking such a duty of good faith would be the discharge of a thirty-year employee six months before a pension vests, or the dismissal of an employee for spurning the affections of a co-worker.
>
> Only a small handful of states have adopted the doctrine. Although Fogel suggests we adopt the action as à tort, four of the five states that recognize the covenant treat it as a contract-based action. New Hampshire, the leading state recognizing the covenant of good faith, has since limited the action to dismissals that are in violation of public policy.
>
> The majority of jurisdictions that have addressed the covenant have unequivocally rejected it.

*Fogel,* 446 N.W.2d at 456–57 (citations omitted). The Iowa Supreme Court has since interpreted *Fogel* as expressly rejecting a cause of action for breach of an implied covenant of good faith and fair dealing in employment situations. *Porter v. Pioneer Hi–Bred Int'l, Inc.,* 497 N.W.2d 870, 871 (Iowa 1993); *French,* 495 N.W.2d at 771; *Grahek,* 473 N.W.2d at 34.

In *Fogel,* the court's rejection of the cause of action was in part because the facts in the record simply did not compel consideration of the claim. *Fogel,* 446 N.W.2d at 457 (plaintiff claimed discharge owing to medical disability, but court upheld discharge because he was unfit to work in a food service establishment). The Iowa Supreme Court has subsequently refused to reconsider its refusal to recognize the cause of action where the bad faith claim would be preempted by Iowa Code Ch. 601A (now Iowa Code Ch. 216) because the bad faith alleged was discrimination. *Grahek,* 473 N.W.2d at 34. Also, in order for an action for breach of implied covenant of good faith and fair dealing to lie, there must be, virtually by definition, an act of bad faith. *Id.* Mere breach of contract, by itself, is not enough. *Id.*

■ In the present case, the court sees no reason to consider a cause of action specifically rejected by the Iowa Supreme Court on a number of occasions. There has been no suggestion of a discharge in violation of public policy, hence under the New Hampshire formulation of the tort, there would be no cause of action. *Fogel,* 446 N.W.2d at 457 (citing *Howard v. Dorr Woolen Co.,* 120 N.H. 295, 297, 414 A.2d 1273, 1274 (1980)). Nor do the facts in this case demonstrate anything like the classic cases of breach of good faith and fair dealing identified by the Iowa Supreme Court. *Id.* at 456. Dismissal of an at-will employee, as long as it is not for discriminatory reasons or in violation of public policy, simply provides no basis for this federal court to assume that the Iowa Supreme Court would recognize a cause of action it has previously rejected. Even were Thomas able to show a constructive dis-

charge on the basis of race, such a claim would be cognizable only under Iowa Code Ch. 216, because it would be Thomas's exclusive remedy, and not as a common-law tort of breach of covenant of good faith and fair dealing. *Grahek,* 473 N.W.2d at 34; *Hamilton v. First Baptist Elderly Hous. Found,* 436 N.W.2d 336, 341–42 (Iowa 1989). Defendants are therefore entitled to summary judgment on Thomas's claim of breach of covenant of good faith and fair dealing.

### D. Intentional Infliction Of Emotional Distress

Thomas also claims that the conduct of the defendants in handling the allegations of his cocaine use and subsequent "pressure" to take another position constituted the intentional infliction of emotional distress. Defendants argue that they are entitled to summary judgment on this claim because as a matter of law no conduct complained of was sufficiently outrageous to support the tort. As an initial matter, the court considers whether any part of Thomas's intentional infliction of emotional distress claim is "preempted" by his claim of discrimination under Iowa Code Ch. 216.

### 1. Tort Claims And Iowa Code Ch. 216

■ Iowa Code Chapter 216 (1993), formerly Iowa Code Chapter 601A (1991), established the Iowa Civil Rights Commission and provides statutory remedies for enforcement of basic civil rights. *Greenland v. Fairtron Corp.,* 500 N.W.2d 36, 37 (Iowa 1993). The Iowa Supreme Court has said that section 601A.16(1), now 216.16(1), renders the chapter's remedies exclusive and preemptive.[6] *Greenland,* 500 N.W.2d at 37;

---

**6.** In the cases cited herein, the Iowa Supreme Court has consistently described the effect of Chapter 216 on other claims arising out of discrimination as "preemption." However, the court believes that Chapter 216 actually provides the "exclusive remedy" for such claims, Iowa Code § 216.16(1), rather than "preempting" any claims. "Preemption" has traditionally referred to situations in which federal law displaces state law, or the law of one level of government displaces the law of another:

Under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, state laws that "interfere with, or are contrary to the laws of congress, made in pur-

suance of the constitution" are invalid. The ways in which federal law may pre-empt state law are well established.... Congress' intent to supplant state authority in a particular field may be expressed in the terms of the statute. Absent explicit pre-emptive language, Congress' intent to supersede state law in a given area may nonetheless be implicit if a scheme of federal regulation is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," if "the Act of Congress ... touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same sub-

*Grahek v. Voluntary Hosp. Coop. Ass'n of Iowa, Inc.,* 473 N.W.2d 31, 33 (Iowa 1991); *Northrup v. Farmland Indus., Inc.,* 372 N.W.2d 193, 197 (Iowa 1985). Preemption occurs unless the claims are separate and independent, and therefore incidental, causes of action. *Greenland,* 500 N.W.2d at 38; *Grahek,* 473 N.W.2d at 34; *Vaughn v. Ag Processing, Inc.,* 459 N.W.2d 627, 639 (Iowa 1990). The claims are not separate and independent when, under the facts of the case, success on the claim not brought under chapter 216 requires proof of discrimination. *Greenland,* 500 N.W.2d at 38.

■ In the present case, although Thomas has also alleged that the conduct he complains is outrageous for purposes of his tort claim was also discriminatory for purposes of his claim under Iowa Code Ch. 216, the court concludes that success on the tort claim does not require proof of discrimination. The conduct Thomas complains of could be outrageous regardless of whether or not it was discriminatory, because a defendant's handling of allegations of drug use by the plaintiff on the job and creation of an intolerable work atmosphere could be accomplished without any regard to the plaintiff's race. The court therefore concludes that Thomas's intentional infliction of emotional distress claim in this case is not "preempted" by his claim under Iowa Code Ch. 216 even though Thomas also alleged that the conduct underlying the present claim was racially discriminatory.

### 2. Elements Of The Tort

■ The elements for recovery on the common law tort of intentional infliction of emotional distress in Iowa are:

(1) outrageous conduct by the defendant;

(2) the defendant's intentional causing, or reckless disregard of the probability of causing emotional distress;

(3) plaintiff suffered severe or extreme emotional distress;

(4) actual and proximate cause of the emotional distress by the defendant's conduct.

*Cutler v. Klass, Whicher & Mishne,* 473 N.W.2d 178, 183 (Iowa 1991) (citing *Vaughn,* 459 N.W.2d at 635–36, and *Vinson v. Linn–Mar Community Sch. Dist.,* 360 N.W.2d 108, 118 (Iowa 1984)). Defendants have challenged the sufficiency of Thomas's claim of intentional infliction of emotional distress as a matter of law principally on the ground that Thomas has not alleged sufficiently outrageous conduct.

### 3. The Outrageousness Of Defendant's Conduct

■ The Iowa Supreme Court has said that when plaintiff brings a claim of intentional infliction of emotional distress, "it is for the court to determine in the first instance, as a matter of law, whether the conduct complained of may reasonably be regarded as outrageous." *Cutler v. Klass, Whicher & Mishne,* 473 N.W.2d 178, 183 (Iowa 1991); *Mills v. Guthrie County Rural Elec.,* 454 N.W.2d 846, 849 (Iowa 1990); *M.H. by and through Callahan v. State,* 385 N.W.2d 533, 540 (Iowa 1986); *Reihmann v. Foerstner,* 375 N.W.2d 677, 681 (Iowa 1985); *Vinson v. Linn–Mar Community School Dist.,* 360 N.W.2d 108, 118 (Iowa 1984); *Roalson v. Chaney,* 334 N.W.2d 754, 756 (Iowa 1983). The Iowa Supreme Court has required an extreme of egregiousness to elevate (or downgrade) mere bad conduct to the level of outrageousness. *Northrup v. Farmland Indus., Inc.,* 372 N.W.2d 193, 198 (Iowa 1985). For conduct to be outrageous, it must be "so extreme in degree, as to go beyond all

---

ject," or if the goals "sought to be obtained" and the "obligations imposed" reveal a purpose to preclude state authority. *Wisconsin Pub. Intervenor v. Mortier,* 501 U.S. 597, 605–08, 111 S.Ct. 2476, 2482–83, 115 L.Ed.2d 532 (1991) (citations omitted). Thus, "where [state] law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress," federal preemption occurs. *John Hancock Mutual Life Ins. Co. v. Harris Trust*

& Sav. Bank, —— U.S. ——, ——, 114 S.Ct. 517, 526, 126 L.Ed.2d 524 (1993) (citing *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984)). The situation here is not such a case of displacement of law among levels of government. Rather, it is one of determining which state law, statutory or common law, provides the exclusive remedy for alleged wrongs.

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Cutler*, 473 N.W.2d at 183 (citing *Vaughn*, 459 N.W.2d at 636); *Engstrom v. State*, 461 N.W.2d 309, 320 (Iowa 1990) (quoting *Vinson*, 360 N.W.2d at 118); *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 801 (Iowa 1984) (quoting Restatement (Second) of Torts § 46 comment d (1965)). Indeed, the Iowa court has said that

> [t]he tort law should encourage a certain level of emotional toughness. "The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Restatement (Second) of Torts § 46, comment d, *supra*. "Against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be." Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv.L.Rev. 1033, 1035 (1936).

*Northrup*, 372 N.W.2d at 198–99 (quoting *Meyer v. Nottger*, 241 N.W.2d 911, 918 (Iowa 1976)). Peculiar susceptibility, by reason of physical or mental condition of the person affected, is a factor in considering whether conduct is outrageous, although "major outrage" is always the crucial element of the tort. *Cutler*, 473 N.W.2d at 183 (quoting Restatement (Second) of Torts § 46, comment f). In *Northrup*, the court quoted extensively from the Restatement (Second) of Torts § 46, comment d, for a statement of the level of bad conduct necessary to be held to be outrageous:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

> Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Northrup*, 372 N.W.2d at 198. Iowa courts have held, as the Restatement suggests, that it is not even sufficient that the conduct in question would have entitled the plaintiff to punitive damages. *Mills*, 454 N.W.2d at 850 (citing *Vinson*, 360 N.W.2d at 118).

It is a simpler matter to discover what kinds of behavior the Iowa Supreme Court has held insufficiently outrageous to sustain the tort than it is to find out what kind of behavior is sufficiently egregious. *See, e.g., Cutler*, 473 N.W.2d at 183 (letter advising partner who had suffered from a period of mental illness that he could not return to law practice without further review by partners was not extremely outrageous and did not generate a genuine issue of material fact on the claim); *Engstrom*, 461 N.W.2d at 320 (negligent failure to search for plaintiffs' adopted daughter's natural father before placing her in plaintiffs' home, and telling adoptive parents the father was dead without verifying his death, were not outrageous); *Kirk v. Farm & City Ins. Co.*, 457 N.W.2d 906, 911 (Iowa 1990) (insurance company's refusal to pay the full amount of uninsured coverage not outrageous); *Mills*, 454 N.W.2d at 849 (rural electric cooperative's conduct in using split bolt connectors instead of compression connectors to connect grounding jumper wire to main neutral line, in failing to discover dangerous situation that such omission presented, and in conducting settlement negotiations through insurance carrier with cooperative customers who sustained fire damage was not sufficiently outrageous); *Tomash v. Deere Indus. Equip. Co.*, 399 N.W.2d 387, 392–93 (Iowa 1987) (bringing of criminal charges was reasonably appropriate and therefore not outrageous); *Reihmann*, 375 N.W.2d at 681 (claim of improperly exerting influence to transfer employee was too speculative, and transfer of employee after complaints from customers was not outra-

geous); *Northrup,* 372 N.W.2d at 198–99 (firing for alcoholism not outrageous in light of extensive responsibilities of plaintiff); *Bossuyt v. Osage Farmers Nat'l Bank,* 360 N.W.2d 769, 777 (Iowa 1985) (bank's refusal to pay own cashier's check not outrageous); *Vinson,* 360 N.W.2d at 119 (deliberate campaign to badger and harass employee not outrageous although "petty and wrong, even malicious"); *Harsha v. State Sav. Bank,* 346 N.W.2d 791, 801 (Iowa 1984) (banker's refusal to extend credit causing creditor to default on other obligations not sufficiently outrageous to support jury verdict on emotional distress claim); *Roalson v. Chaney,* 334 N.W.2d 754, 756 (Iowa 1983) (offer to marry made to woman still married and intended for her was not outrageous conduct as to woman's husband, even if it showed poor judgment); *Action Real Estate Corp. v. Bulechek,* 309 N.W.2d 502, 505 (Iowa 1981) (refusal to pay commission on sale of land not outrageous); *Amsden v. Grinnell Mut. Reinsurance Co.,* 203 N.W.2d 252, 255 (Iowa 1972) (refusal to pay fire insurance benefits during period of arson investigation to insured suspected of arson by authorities not outrageous). Few cases can be located where an Iowa court actually held the conduct alleged was sufficiently outrageous. *See, e.g., Blong v. Snyder,* 361 N.W.2d 312, 315–17 (Iowa App.1984) (supervisors' excessive and groundless harassment of employee sufficiently outrageous); *Randa v. U.S. Homes, Inc.,* 325 N.W.2d 905, 907–08 (Iowa App. 1982) (defective construction of home and filing of mechanic's lien so shocking as to support jury verdict for emotional distress).

▮ For many of the same reasons that the court concluded defendants' conduct was not discriminatory, it now concludes that it was not outrageous as a matter of law. Defendants were confronted with allegations from patients that one of their rehabilitation technicians had been using cocaine. Defendants had legitimate reasons to be concerned about such allegations. They took reasonable steps to investigate those accusations. Following their investigation and discussion of the matter with Thomas, absolutely nothing happened to change Thomas's employment status. Nor does the limited extent to which defendants had any involvement in suggesting that Thomas apply for another position at the Center amount to outrageous conduct. Thomas has failed to generate a genuine issue of material fact that he was outrageously "pressured" to take the other job, or that he was subjected to anything like the conduct found to be outrageous under Iowa law. The court believes that the conduct to which Thomas was subjected was far less "petty and malicious" than the conduct to which the plaintiff in *Vinson* was subjected. *Vinson,* 360 N.W.2d at 119 (deliberate campaign to badger and harass employee not outrageous although "petty and wrong, even malicious"). Nothing in the recitation of the facts of this case to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Northrup,* 372 N.W.2d at 198. Defendants are entitled to summary judgment on Thomas's claim of intentional infliction of emotional distress.

### E. The Defamation Claim

Defendants have moved for summary judgment on Thomas's defamation claim on the ground that the communications Thomas alleges were defamatory, that *patients* had accused Thomas of drug use, were true. They have also moved for summary judgment on this claim on the ground that they had a qualified privilege to communicate the allegedly defamatory statements within the Center among its managerial staff and to such employees of the greater St. Luke's system as were necessary to properly address the patients' allegations. The defendants also argue that Thomas unnecessarily self-published the allegedly defamatory statements to employees of the Center and St. Luke's by discussing the matter with Dr. Dale Wassmuth and Jim Wigton. Thomas asserts that defendants had no qualified privilege because confidentiality was breached and the defamatory statements became common knowledge among the staff and patients of the Center and of St. Luke's.

### 1. Defamation And Defamation "Per Se"

▮ The law of defamation consists of the twin torts of libel and slander, and the

gist of a defamation action is the publication of written or oral statements which tend to injure a person's reputation and good name. *Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994) (citing W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 111, 15 771 (5th ed. 1984)). Slander generally consists of the oral publication of defamatory matter. *Id.* Libel in Iowa is the "malicious publication, expressed either in printing or in writing, or by signs and pictures, tending to injure the reputation of another person or to expose [the person] to public hatred, contempt, or ridicule or to injure [the person] in the maintenance of [the person's] business." *Vinson v. Linn–Mar Community School Dist.*, 360 N.W.2d 108, 115 (Iowa 1984). Thomas's allegations here appear to be primarily assertions of slander by oral statements of defendants to others concerning Thomas's alleged drug use. Iowa recognizes the common-law rule that republication of a defamatory statement is subject to the same liability as the original statement. *Jones v. Palmer Communications, Inc.*, 440 N.W.2d 884, 893 (Iowa 1989); *Morse v. Times–Republican Printing Co.*, 124 Iowa 707, 717–18, 100 N.W. 867, 870–71 (1904). Furthermore, a person making a defamatory statement "[is], and should be, liable for damages resulting from a repetition or republication of the [defamatory] statement when such repetition or republication was reasonably foreseeable to the person making the statement." *Brown v. First Nat'l Bank of Mason City*, 193 N.W.2d 547, 554 (Iowa 1972).

 Where there is no communication to the general public, but instead the statements are made only to the plaintiff, and the plaintiff disseminates the statements, there is no defamation. *McBride v. City of Sioux City*, 444 N.W.2d 85, 92 (Iowa 1989); *Belcher v. Little*, 315 N.W.2d 734, 738 (Iowa 1982). The plaintiff cannot create a cause of action by communicating defamatory statements to others unless under a strong compulsion to do so. *Belcher*, 315 N.W.2d at 738. Whether such compulsion exists must be decided by the finder of fact under the circumstances in each case and must be based on the introduction of substantial evidence. *Id.*

 In order to prevail on a defamation claim, a plaintiff must ordinarily prove that the statements were made with malice, were false, and caused damage. *Vinson*, 360 N.W.2d at 115 (citing *Vojak v. Jensen*, 161 N.W.2d 100, 104 (Iowa 1968)). However, some statements, in a special category of defamation "per se," are actionable without proof of malice, falsity, or special harm. *Lara*, 512 N.W.2d at 785; *Vinson*, 360 N.W.2d at 115–116; *Kelly v. Iowa State Educ. Ass'n*, 372 N.W.2d 288, 295 (Iowa App. 1985). Words are defamatory per se if they are of such a nature, whether true or not, that the court can presume as a matter of law that their publication will have libelous effect. *Vinson*, 360 N.W.2d at 116 (citing *Haas v. Evening Democrat Co.*, 252 Iowa 517, 107 N.W.2d 444, 447 (1961)). Among such statements are defamatory imputations affecting a person in his or her business, trade, profession, or office. *Lara*, 512 N.W.2d at 785; *Vojak v. Jensen*, 161 N.W.2d 100, 104 (Iowa 1968); *Galloway v. Zuckert*, 447 N.W.2d 553, 554 (Iowa App.1989), *cert. denied*, 494 U.S. 1057, 110 S.Ct. 1526, 108 L.Ed.2d 765 (1990). In addition, accusing a person of a crime is defamatory per se when the crime charged is indictable, and involves moral turpitude or subjects one to a sentence of incarceration. *Rees v. O'Malley*, 461 N.W.2d 833, 835 (Iowa 1990); *Amick v. Montross*, 206 Iowa 51, 57, 220 N.W. 51, 54 (1928).

### 2. *Qualified Privilege*

 Although Thomas has alleged defamation per se, because the allegedly defamatory statements concerned criminal drug use, the law recognizes that circumstances may arise when a person, in order to protect his or her own interest or the interest of others, must make statements about another which are defamatory or defamatory per se, and in such circumstances a qualified privilege bars liability. *Vojak*, 161 N.W.2d at 104; *Higgins v. Gordon Jewelry Corp.*, 433 N.W.2d 306, 308 (Iowa App.1988). Defendants may raise qualified privilege as a defense if they can show that they made the allegedly defamatory statements in the proper circumstances:

A qualified privilege applies to statements without regard to whether they are defam-

atory per se when they are made on an appropriate occasion in good faith on a subject in which the communicator and addressee have a shared interest, right or duty.

*Vinson*, 360 N.W.2d at 116; *see also Fischer v. UNIPAC Serv. Corp.*, 519 N.W.2d 793, 795 (Iowa 1994); *Lara*, 512 N.W.2d at 785. The statements must be made "in a manner and under circumstances fairly warranted by the occasion." *Lara*, 512 N.W.2d at 785; *Knudsen v. Chicago & North Western Transp. Co.*, 464 N.W.2d 439, 442 (Iowa 1990); *Rees v. O'Malley*, 461 N.W.2d 833, 837 (Iowa 1990).

■ The privilege must not be abused or exceeded. *Lara*, 512 N.W.2d at 786. Therefore, the privilege is lost if the statements are not made in good faith, *Lara*, 512 N.W.2d at 786, *Haldeman v. Total Petroleum, Inc.*, 376 N.W.2d 98, 104 (Iowa 1985), or are made with actual malice. *Knudsen*, 464 N.W.2d at 443; *Vinson*, 360 N.W.2d at 116. So long as good faith is present,

> the person making the statement is not limited to facts that are within his personal knowledge, but may, and should, pass on to his inquirer all relevant information that has come to him, regardless of whether he believes it to be true or not. But of course, any such communication is actionable if made maliciously.

*Haldeman*, 376 N.W.2d at 104 (quoting 50 Am.Jur.2d *Libel & Slander* § 273, at 791). As distinct from legal malice and from actual malice under *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964),[7] actual malice in this context

> does depend on the motive for the statement. Actual malice requires proof that

the statement was made with malice in fact, ill-will or wrongful motive.

*Id.* at 103–04 (citing *Vinson*, 360 N.W.2d at 117); *Benishek v. Cody*, 441 N.W.2d 399, 403 (Iowa App.1989). In the absence of actual malice, the qualified privilege extends even to statements that are not true. *Vojak*, 161 N.W.2d at 105; *Benishek*, 441 N.W.2d at 402 (citing *Vojak*). The privilege does not extend to publication to the general public. *Rees*, 461 N.W.2d at 837 (citing *Brown v. First Nat'l Bank of Mason City*, 193 N.W.2d 547, 552 (Iowa 1972)).

■ In summary, the elements of the qualified privilege defense are that: (1) the statements were made in good faith; (2) the defendant had an interest to be upheld; (3) the statements were limited in their scope to this purpose; (4) the statements were made on a proper occasion; and (5) publication was in a proper manner and to proper parties only. *Knudsen*, 464 N.W.2d at 439 (citing *Brown v. First Nat'l Bank of Mason City*, 193 N.W.2d 547, 552 (Iowa 1972)).

■ Ordinarily, it is for the court to decide whether the privilege is available for the communication in question. *Brown v. First Nat'l Bank of Mason City*, 193 N.W.2d 547 (Iowa 1972); *Higgins*, 433 N.W.2d at 308; Restatement (Second) of Torts § 619(1), p. 316 (1977). The burden is on the defendant to establish the existence of a qualified privilege. *Lara*, 512 N.W.2d at 785; *Rees*, 461 N.W.2d at 837. Qualified privilege is an affirmative defense that must be pleaded. *Vinson*, 360 N.W.2d at 116; *Higgins*, 433 N.W.2d at 311 (quoting *Vinson*). *See also Spencer v. Spencer*, 479 N.W.2d 293, 296 (Iowa 1991) (qualified privilege one of "affirmative defenses" to defamation on which

---

7. Under the constitutional standards established in *New York Times*, "actual malice" must be shown before a private figure plaintiff may recover punitive damages, *In re IBP Confidential Bus. Documents Litigation: Bagley v. Iowa Beef Processors, Inc.*, 797 F.2d 632, 647 (8th Cir.1986) (citing *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986)), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1293, 1294, 94 L.Ed.2d 150 (1987) and before a public figure plaintiff may recover any damages. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 335–36, 94 S.Ct. 2997, 3005, 41 L.Ed.2d 789 (1974). "Malice" under *New York Times*

does not refer to ill will. *Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1433 (8th Cir.1989), *cert. denied*, 493 U.S. 1036, 110 S.Ct. 757, 107 L.Ed.2d 774 (1990). The primary focus must be on the defendant's attitude toward the truth of the statements, rather than on the defendant's attitude toward the plaintiff. *Id.* A statement is made with "actual malice" if it is made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Bagley*, 797 F.2d at 643 (citing *New York Times*, 376 U.S. at 279–80, 84 S.Ct. at 725–26). Actual malice in this context must be established by clear and convincing evidence. *Id.*

court properly instructed jury), *cert. denied,* —— U.S. ——, 113 S.Ct. 120, 121 L.Ed.2d 76 (1992). The court concludes that where no genuine issue of material fact exists to deny an available privilege, for example on the grounds of actual malice or lack of good faith, the court may enter summary judgment in favor of the defendant.

### 3. Defendants' Grounds For Summary Judgment

Defendants contend first that they cannot be held liable for allegedly defamatory statements that did not originate with them. They argue that *patients* accused Thomas of drug use, and that they only repeated those statements to bring them to the attention of proper managerial personnel and to take proper action. However, repeating defamatory statements also subjects the person repeating them to liability. *Jones,* 440 N.W.2d at 893; *Morse,* 124 Iowa at 717–18, 100 N.W. at 870–71. Also, if it was reasonably foreseeable that others would republish the statements made by defendants, they would be liable for that republication. *Brown,* 193 N.W.2d at 554.

Defendants also argue that they are entitled to summary judgment because Thomas himself republished the allegedly defamatory statements to Dr. Wassmuth and Mr. Wigton. Such self-publication alone would not entitle defendants to summary judgment, if the plaintiff was under a strong compulsion to make such a republication. *Belcher,* 315 N.W.2d at 738. Whether such compulsion exists in this case must ordinarily be decided by the finder of fact, *Id.,* because Thomas has generated a genuine issue of material fact that he was under such a compulsion. Thomas asserts that he felt he had to talk to the parties identified to try to restore his reputation. It would therefore ordinarily be for the jury to decide whether these circumstances created a sufficient compulsion for Thomas to republish the allegedly defamatory statements. *Id.*

However, the court concludes that defendants have a valid defense of qualified privilege in the circumstances here. The defendants only repeated the patients' allegations that Thomas had been using cocaine within the appropriate managerial sphere of the Center or to persons outside of that sphere who could advise them as to the appropriate manner in which to handle the allegations. The defendants had an interest in allegations that a substance abuse rehabilitation center technician had himself been using illegal drugs, and communicated that concern only to others with a shared interest "in a manner and under circumstances fairly warranted by the occasion." *Lara,* 512 N.W.2d at 785; *Knudsen,* 464 N.W.2d at 442; *Rees,* 461 N.W.2d at 837.

Thomas asserts that Mansfield's initial report to Middleton could have been overheard by other employees or patients of the Center who did not have an interest in the matter because they were not his supervisors. However, Thomas has not shown any evidence that the statements were in fact overheard or that Mansfield's manner of reporting disregarded confidentiality. On the contrary, the affidavits of the people involved in that initial report, including Kevin Beauvais, indicate that Mansfield made a good faith attempt to limit his report to appropriate individuals.

The court concludes that even if rumors concerning Thomas's drug use circulated through the Center, and Thomas has not established or generated a genuine issue of fact that this is so because he has made only bald assertions on the subject, the court is mindful that allegations that Thomas had been using drugs originated with *patients* of the Center. It seems obvious to the court that defendants do not lose their qualified privilege because rumors circulate from another source over which they have no control. The fact that rumors circulated does not generate a genuine issue of material fact in this case as to whether or not defendants breached confidentiality and have therefore abused their qualified privilege.

Finally, Thomas has failed to generate a genuine issue of material fact, or even to argue, that defendants made statements concerning his drug use without good faith or with actual malice. The court has already concluded that defendants had a legitimate concern about allegations that a rehabilita-

tion technician had himself been using illegal drugs and that they conducted a reasonable investigation of those allegations. The court finds that defendants' response to the situation, which, as Dr. Millard admitted in his deposition, "may not have been handled perfectly from an administrative standpoint," Affidavit of Dr. Clifford G. Millard, p. 5, was nonetheless conducted in good faith without malice. Defendants have a valid defense of qualified privilege to Thomas's defamation claim entitling them to summary judgment.

Because the court concludes that defendants are entitled to summary judgment in their favor on Thomas's claim of defamation because they have a good defense of qualified privilege, the court does not reach their assertion of the defense of truth. Thomas's claim of defamation must be dismissed.[8]

## V. CONCLUSION

The court concludes that this matter must be dismissed in the first instance for lack of subject matter jurisdiction because plaintiff's complaint lacks a federal question upon which to assert federal jurisdiction. However, in the alternative, the court has construed the "substantive allegations" and jurisdictional statement as inartful attempts to state a federal question cause of action under 42 U.S.C. § 1981. The court has therefore considered the merits of defendants' motion for summary judgment on each of Thomas's claims.

Defendant St. Luke's Health Systems, Inc., is entitled to summary judgment because Thomas has failed to generate a material issue of fact that this umbrella corporation, one of the subsidiaries of which actually employed Thomas, was Thomas's employer. St. Luke's Health Systems, Inc., is therefore dismissed from this lawsuit.

On the merits of Thomas's § 1981 claim, the court concludes that Thomas has failed to make out a *prima facie* case of discrimination because he has failed to demonstrate any adverse employment action. In the alterna-

tive, the court concludes that on the ultimate question of such a claim, defendants have not discriminated or intended to discriminate against Thomas by any of the actions they took. Thomas has failed to generate a genuine issue of material fact that defendants' legitimate, non-discriminatory reasons for their actions are pretextual. For the same reasons, the court concludes that defendants are entitled to summary judgment on Thomas's discrimination claims under Iowa Code Ch. 216.

Defendants are also entitled to summary judgment in their favor on the rest of Thomas's state-law claims. First, the Iowa Supreme Court has never recognized an action for breach of covenant of good faith and fair dealing in an employment context. Second, the court concludes as a matter of law that none of the conduct Thomas has alleged is sufficiently outrageous to support a claim for intentional infliction of emotional distress. Finally, the court, having construed defendants' motion for summary judgment as pleading an affirmative defense of qualified privilege to Thomas's claim of defamation, concludes that defendants have that affirmative defense available in the circumstances of this case. Thomas has failed to generate a genuine issue of material fact that the defense was lost by abuse, actual malice, or lack of good faith. Summary judgment is therefore appropriate in favor of defendants on all of Thomas's claims and this matter is dismissed.

**IT IS SO ORDERED.**

8. Although the court has dismissed all of Thomas's claims, the court does not mean to suggest that Thomas should not have found his experience with the Center and the allegations that he had been using drugs hurtful. The court does understand the concern a recovering addict may have for his reputation in light of accusations of renewed drug use. However, the court has no means available to assuage hurt feelings on the claims or in the circumstances presented here.