3 F.3d 281
 62 Fair Empl.Prac.Cas. 1125,
62 Empl. Prac. Dec. P 42,590
Nancy J. HUKKANEN, Appellee,
v.
INTERNATIONAL UNION OF OPERATING ENGINEERS, HOISTING &
PORTABLE LOCAL NO. 101; Sam F. Long, Appellants.
Nancy J. HUKKANEN, Appellant,
v.
INTERNATIONAL UNION OF OPERATING ENGINEERS, HOISTING &
PORTABLE LOCAL NO. 101; Sam F. Long, Appellees.
 Nos. 92-1962, 92-2042.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 16, 1993.
Decided Aug. 24, 1993.
Rehearing and Suggestion for Rehearing
En Banc Denied Nov. 17, 1993.
 
 G. Gordon Atcheson, Kansas City, MO, argued (Joseph W. Moreland on the brief), for appellants.
 Fred J. Petzold, Overland Park, KS, argued, for appellee.
 Before FAGG, Circuit Judge, and HEANEY and BRIGHT, Senior Circuit Judges.
 FAGG, Circuit Judge.
 
 
 1
 While Sam F. Long was the chief executive officer of the International Union of Operating Engineers, Hoisting and Portable Local No. 101 (the Union), he subjected his secretary, Nancy J. Hukkanen, to unwelcome lewd talk and touch and a gun-enforced threat of rape. Hukkanen quit her job and brought this action under Title VII against the Union and Long. Hukkanen alleged that through various continuing actions spanning a two-year period, Long discriminated against her because of her sex, the situation became so intolerable that she felt forced to resign, and Long's treatment of her was intentional and made with the foreseeable effect of causing her to quit her job with the Union. Hukkanen alleged she was thus constructively discharged because of her sex in violation of Title VII. Following a bench trial, the district court found in Hukkanen's favor. The court awarded Hukkanen back pay, front pay, pension benefits, and attorney's fees, but declined her request to enhance the monetary awards to compensate her for increased income tax liability in the year of the award. The Union and Long appeal. Hukkanen cross appeals. We remand the issue of attorney's fees to the district court, but affirm on all other issues.
 
 
 2
 Hukkanen began working for the Union in 1978 as a general office worker and was soon promoted to secretary. Hukkanen had little contact with Long until 1980, when Long became the Union's chief executive officer. Long asked Hukkanen to be his personal secretary, and Hukkanen agreed. In June 1981 Long began to harass Hukkanen sexually. Long's offensive conduct was unwelcome and occurred on a regular basis, both at the office and away from the office ostensibly on business. Hukkanen resigned her job at the Union on October 29, 1984. Neither Long nor the Union had plans to fire her at that time, and when Hukkanen quit, Long asked her to reconsider her decision. Hukkanen started a lower paying job with another employer on December 1, 1984.
 
 
 3
 On appeal, the Union and Long do not challenge the district court's findings of fact about Long's discriminatory conduct or its finding that the Union is liable for Long's actions. Instead, the Union and Long contend the district court's findings do not support the entry of judgment on the ground that Hukkanen was constructively discharged. Specifically, they contend the district court did not find that Long's actions were taken with the intention of forcing Hukkanen to quit.
 
 
 4
 We set out this circuit's constructive discharge standard in Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir.1981). In that case, we stated, "A constructive discharge exists when an employer deliberately renders the employee's working conditions intolerable and thus forces [the employee] to quit...." Id. We further explained that "the employer's actions must have been taken with the intention of forcing the employee to quit." Id. In addition, we said that a constructive discharge exists when "a reasonable person [in the employee's situation] would find conditions intolerable." Id. The Union and Long contend the record does not support a finding of constructive discharge as defined in Bunny Bread because, in the words of the Union and Long, "Long's harassment was intended to extract some sort of sexual favor from Hukkanen or to provide a perverse source of amusement" rather than to force her to resign. Put another way, the Union and Long take the position that Hukkanen failed to prove her constructive discharge because Long wanted her to stay on the job so he could continue to harass her sexually. We reject the Union and Long's bizarre contention.
 
 
 5
 Our language in Bunny Bread does not mean constructive discharge plaintiffs must prove their employers consciously meant to force them to quit. See Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir.1986); Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir.1982); Clark v. Marsh, 665 F.2d 1168, 1175 n. 8 (D.C.Cir.1981). When an employer denies a conscious effort to force an employee to resign, as the Union and Long do in this case, the employer must necessarily be held to intend the reasonably foreseeable consequences of its actions. Derr, 796 F.2d at 344; Held, 684 F.2d at 432; Clark, 665 F.2d at 1175 n. 8. To hold otherwise would draw an irrational distinction among discrimination victims who reasonably feel forced to quit: employees who are discriminated against because their employer wants them to quit could prove a constructive discharge, while employees like Hukkanen who are discriminated against because of their employers' ongoing pursuit of sexual gratification could not. Constructive discharge plaintiffs thus satisfy Bunny Bread 's intent requirement by showing their resignation was a reasonably foreseeable consequence of their employers' discriminatory actions. Accordingly, if Hukkanen's resignation was a reasonably foreseeable consequence of Long's harassment, Long's "actions [were necessarily] taken with the intention of forcing [Hukkanen] to quit." Bunny Bread, 646 F.2d at 1256.
 
 
 6
 We now turn to the district court's findings. The district court found that from June 1981 through August 1984, Long regularly subjected Hukkanen to unsolicited conduct that Hukkanen reasonably regarded as offensive; Hukkanen quit her job with the Union on October 29, 1984, because the working conditions created by the cumulative effect of Long's behavior were intolerable; and the effect of Long's actions on Hukkanen was the same as on a reasonable person in Hukkanen's position. Although the district court did not expressly find Hukkanen's resignation was a reasonably foreseeable consequence of Long's conduct, the district court's finding that a reasonable person in Hukkanen's position would have felt compelled to quit is equivalent to such a finding. Whether a court applies Bunny Bread's language about the employer intending to force the employee to quit or its language about a reasonable employee finding conditions intolerable, the same evidence is involved and the constructive discharge finding is the same. Paroline v. Unisys Corp., 879 F.2d 100, 114 & n. 2 (4th Cir.1989) (Wilkinson, J., dissenting), vacated in part on reh'g, 900 F.2d 27, 28 (4th Cir.1990) (en banc) (adopting panel dissent's reasoning on constructive discharge issue); see Derr, 796 F.2d at 344; Held, 684 F.2d at 432. Further, the district court's factual findings about Long's sexual corruption leave no doubt that Hukkanen's resignation was a reasonably foreseeable result. Among other things, Long repeatedly propositioned Hukkanen, tried to engage her in offensive conversation about sex, touched her breasts, and pawed between her legs. Long attempted to force himself on Hukkanen physically and once brandished a gun in his office and threatened to rape her. Having concluded Hukkanen was constructively discharged, we now turn our attention to the other issues raised on appeal.
 
 
 7
 The Union and Long contend Hukkanen's lawsuit is time-barred because she failed to file her discrimination charge with the EEOC until March 1985. The Union and Long argue that Hukkanen knew or reasonably should have known of sufficient facts to support a Title VII case no later than July 1983, and the 180-day limitations period began to run at that time. See 42 U.S.C. Sec. 2000e-5(e)(1) (Supp. III 1991) (requiring charge to be filed with EEOC within 180 "days after the alleged unlawful employment practice"). This argument ignores that Hukkanen alleged and proved a pattern of sexual harassment that culminated in her constructive discharge. When Title VII violations are continuing in nature, the limitations period contained in Sec. 2000e-5(e)(1) does not begin to run until the last occurrence of discrimination. See Gardner v. Morris, 752 F.2d 1271, 1279 (8th Cir.1985). The Union's last act of discrimination against Hukkanen was her constructive discharge, and within 180 days of her constructive discharge, Hukkanen filed her charge with the EEOC. We thus conclude Hukkanen's lawsuit is not time-barred.
 
 
 8
 The Union and Long also contend Hukkanen was not entitled to any damages after she resigned because she would have been terminated for nondiscriminatory reasons. The district court rejected assertions that Hukkanen was an incompetent employee, however, and found that "but for the unlawful conduct, [Hukkanen] would have remained an employee of the Union for the foreseeable future." Because this finding is neither clearly erroneous nor disputed by the Union and Long, this contention fails.
 
 
 9
 The Union and Long next attack the damages that the district court awarded. In challenging the front pay award, the Union and Long do not suggest that Hukkanen should have been reinstated, but contend the award is unwarranted because there is no evidence Hukkanen will suffer the effects of discrimination in the future. The effect of the Union's unlawful constructive discharge of Hukkanen, however, is that Hukkanen now has a lower paying job. She applied for higher paying jobs but was not hired. The district court decided "an award of front pay for a period of ten years is reasonable and necessary to afford [Hukkanen] an opportunity to obtain employment having pay and responsibilities equal to the pay and responsibilities she had at [the Union]." The calculation of front pay, which is necessarily uncertain, is a matter of equitable relief within the district court's sound discretion. MacDissi v. Valmont Indus., Inc., 856 F.2d 1054, 1060 (8th Cir.1988). We cannot say the district court abused its discretion.
 
 
 10
 As for the back pay award, the Union and Long contend it is excessive because Hukkanen failed to mitigate her damages. We disagree. "Wrongfully discharged claimants must use reasonable efforts to mitigate their damages." Brooks v. Woodline Motor Freight, Inc., 852 F.2d 1061, 1065 (8th Cir.1988). Efforts to mitigate should be honest and in good faith, but need not be successful. Id. Hukkanen secured a new job about one month after her constructive discharge and had been continuously employed in that job up to the date of trial. Hukkanen unsuccessfully sought higher paying jobs. We conclude Hukkanen's attempts to mitigate her damages were reasonable.
 
 
 11
 The Union and Long also contend the back pay award should be reduced under the doctrine of laches. Hukkanen could have requested a right-to-sue letter in September 1985 (180 days after filing charges with the EEOC in March 1985), 29 C.F.R. Sec. 1601.28(a)(1), but did not request one until February 1990. According to the Union, Hukkanen should not receive back pay for the four and a half year period that she could have requested a letter but failed to do so. See Kamberos v. GTE Automatic Elec., Inc., 603 F.2d 598, 603 (7th Cir.1979), cert. denied, 454 U.S. 1060, 102 S.Ct. 612, 70 L.Ed.2d 599 (1981). The doctrine of laches is an affirmative defense that may apply in a Title VII lawsuit if the plaintiff's delay in filing is unreasonable and unexcused, and the defendant shows resulting prejudice. Whitfield v. Anheuser-Busch, Inc., 820 F.2d 243, 244 (8th Cir.1987). Plaintiffs have some obligation to monitor the progress of their charges with the EEOC and do not have an absolute right to wait until the EEOC proceedings conclude. Waddell v. Small Tube Prods., Inc., 799 F.2d 69, 77 (3d Cir.1986); Garrett v. General Motors Corp., 844 F.2d 559, 561-62 (8th Cir.), cert. denied, 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 248 (1988). Whether delay is excusable depends on the facts of each case, Waddell, 799 F.2d at 77, and is a matter within the district court's sound discretion, Garrett, 844 F.2d at 562.
 
 
 12
 During the long interim between filing her charges with the EEOC and receiving her right-to-sue letter, Hukkanen showed interest in prosecuting her claim. Hukkanen telephoned the agency at least twenty times to check on the status of her charges. See Whitfield, 820 F.2d at 245. Hukkanen did not know she could request a right-to-sue letter, and obtained one soon after she retained her attorney and was informed of this option. See id.; Bishop v. District of Columbia, 788 F.2d 781, 783 n. 1 (D.C.Cir.1986). Further, the Union does not allege the delay in prosecuting the claim prejudiced its defense in the form of lost evidence or unavailability of witnesses. See Whitfield, 820 F.2d at 245. We thus conclude the district court did not abuse its discretion in declining to reduce the back pay award under the doctrine of laches.
 
 
 13
 The Union and Long next contest the district court's decision to award Hukkanen an immediate lump sum payment of her pension benefits. The Union and Long believe Hukkanen should not receive her pension benefits until she reaches retirement age. When a successful constructive discharge plaintiff is not reinstated, however, the district court may award the present value of the plaintiff's interest in the pension plan as of the date of settlement. Loeb v. Textron, Inc., 600 F.2d 1003, 1021 (1st Cir.1979). By the time the district court awarded Hukkanen damages in February 1992, Hukkanen would have been vested in her plans for several years. The pension benefit award was based on the present value of Hukkanen's plan benefits, assuming Hukkanen's participation up to the date of the award. The award did not go beyond making Hukkanen whole. See Glover v. McDonnell Douglas Corp., 981 F.2d 388, 397 (8th Cir.1992), petition for cert. filed, 62 U.S.L.W. 3009 (U.S. July 2, 1993) (No. 93-34). We do not believe the district court abused its discretion.
 
 
 14
 The Union and Long also challenge the district court's application of an attorney's fee multiplier. The district court tripled the lodestar amount to reflect the risk of loss a lawyer faces in taking a sexual harassment case against a high profile defendant on a contingent fee basis. After the district court awarded the attorney's fees in this case, the United States Supreme Court held the federal fee shifting statutes do not allow enhancement of a fee award beyond the lodestar amount to reflect that a party's attorneys were retained on a contingency basis. City of Burlington v. Dague, --- U.S. ----, ---- - ----, 112 S.Ct. 2638, 2641-44, 120 L.Ed.2d 449 (1992). In light of Dague, we must reverse the fee enhancement for risk of loss. We remand for further consideration of the fee award.
 
 
 15
 In her cross appeal, Hukkanen asserts the district court should have enhanced her monetary awards to compensate her for increased income tax liability resulting from receipt of the awards in one year, thus subjecting her to higher tax rates than she would otherwise pay on her wages and retirement benefits. The district court denied Hukkanen's request because she failed to present evidence of the enhancement's amount or a convenient way for the court to calculate the amount at the time the court announced its judgment. We cannot say the district court abused its discretion in denying Hukkanen's request.
 
 
 16
 We remand the issue of attorney's fees for further consideration, but affirm the district court in all other respects.