Geraldine **PEDERSEN**, Plaintiff,

v.

**CASEY'S GENERAL STORES, INC.,** Defendant.

No. 4:CV96–3233.

United States District Court, D. Nebraska.

Sept. 29, 1997.

927

Carole McMahon–Boies, Pepperl & McMahon–Boies, Lincoln, NE, for Plaintiff.

John E. Hubbard, Blackwell, Sanders, Matheny, Weary & Lombardi, Omaha, NE, for Defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

The jury has rendered a verdict in favor of the plaintiff (Pedersen) and against the defendant (Casey's) on the plaintiff's claim of religious discrimination in the employment context. The jury found that Pedersen had been constructively discharged after failing to come to work at Casey's on Easter Sunday and Casey's thus violated 42 U.S.C. § 2000e–2 ("It shall be an unlawful employment practice for an employer to ... discharge any individual ... because of such individual's ... religion.").

I did not to submit the issue of "front pay" to the jury. *Cf. Newhouse v. McCormick & Co., Inc.*, 110 F.3d 635, 642 (8th Cir.1997) (in an ADEA case, whether to award front pay and how much front pay is an issue for the court and not the jury).[1] As a result, there

---

1. It might be argued that ADEA cases are differ-   ent from Title VII cases, and thus the Civil Rights

remains for decision the question of what, if any, additional relief Pedersen should be given. Moreover, there also remains for decision a related state law claim that the parties have agreed must be resolved by the court. This memorandum and order will settle both issues, and will also establish a schedule for submitting an application for, and an objection to, attorney fees.

Ultimately, I find and conclude that Pedersen is entitled to "front pay" rather than reinstatement on the Title VII claim and that she is entitled to $7,411.17. I also find and conclude that Pedersen has proven religious discrimination under Nebraska law, and is entitled to "back pay" of $25,076.51, compensatory damages of $10,000.00, and "front pay" of $7,411.17.

## I. Background

Casey's operates a chain of convenience stores throughout the Midwest. One store it operated is in Holdrege, Nebraska, and that is where Pedersen worked.

After two earlier stints as a Casey's employee (that resulted in Pedersen voluntarily ending her employment), Casey's hired Pedersen a third time. During this period of employment, Pedersen worked as a cashier. Casey's regarded Pedersen as an outstanding employee, and that is why it hired her a third time. Pedersen was especially highly regarded by a former manager of the Casey's store where Pedersen worked and by a former Casey's area supervisor. These women, and other witnesses, gave glowing accounts of Pedersen's work.

Pedersen is a fundamentalist Christian. Because of her religious convictions, Pedersen does not believe that she should work on Easter Sunday. It was her practice to attend church in the morning and evening on Easter Sunday, and not to work at all on that day.

She claimed that Casey's had known of and accommodated her religious beliefs in the past, but failed to do so in April of 1995. In particular, Pedersen asserted that the new manager scheduled Pedersen to work although a former manager had promised Pedersen Easter off in exchange for working secular holidays.

Shortly before Easter in 1995, Pedersen learned that the new manager had scheduled her to work on Easter Sunday evening. After first protesting in writing and without success, Pedersen decided not to work as scheduled. Later, complaining that Casey's had discharged her, Pedersen sued.

Pedersen argued that Casey's violated 42 U.S.C. § 2000e-2 by forcing her to work on Easter Sunday when Casey's knew of her sincere religious convictions that prevented such work. For the same reason, Pedersen also claimed that Casey's violated the Nebraska Fair Employment Practice Act. Neb. Rev.Stat. § 48-1101 to 48-1126 (Michie 1995). Among other things, Pedersen sought damages and "reinstatement or front pay in lieu thereof." (Filing 1, Complaint.)

The Title VII claim was tried to a jury, except the issue of reinstatement or front pay. While the plaintiff argued that the front pay issue should go to the jury, the parties agreed that, if we did not submit the issue, we would resolve the reinstatement and front pay issue on the record made during the jury trial.

By further agreement of the parties, we tried the state law claim to the court. Again, the parties agreed that the record made before the jury is also the record for resolution of the state law claim.

Act of 1991 should be read to allow a jury to determine "front pay" in a Title VII case. However, I believe the Circuit Court's reasoning in *Newhouse* is equally applicable to Title VII cases. Although I disagree with the decision of the Court of Appeals in *Newhouse*, I am bound to fairly apply it. In addition, "compensatory" damages under the 1991 Civil Rights Act do not include "any other type of relief authorized under [42 U.S.C. § 2000e-5(g)] ." 42 U.S.C. § 1981a(b)(2) (exclusion from compensatory damages). Since "front pay" claims under Title VII have traditionally been thought to be "equitable" in nature under section 2000e-5(g), when one applies the Act's "exclusion" it is reasonable to conclude that "compensatory damages" do not include "front pay." *See, e.g., Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit* 93 (1995) (noting uncertainty on this issue, but stating: "Because front pay is essentially an equitable remedy in lieu of reinstatement, this remedy traditionally has been viewed as an issue for the court, not the jury.") (citation omitted).

On the issue of liability under Title VII, the jury was instructed that before it could return a verdict for Pedersen, it must find that she had proven the following:

(1) Pedersen had a bona fide belief that working on Easter Sunday was contrary to her religious beliefs;

(2) Pedersen informed Casey's about the conflict between compliance with an employment requirement and her religious beliefs; and

(3) Pedersen was constructively discharged because: (a) Casey's made her working conditions intolerable by requiring her to work on Easter Sunday, and, (b) Pedersen's religion was a motivating factor in Casey's decision, and (c) Pedersen's failure to return to work was a reasonably foreseeable result of Casey's actions. (Filing 63, Instruction 6, Pt. I.)

We also instructed the jury to consider Casey's affirmative defense. We told the jury that Casey's had the burden to prove the defense. Casey's claimed that it (1) offered a reasonable accommodation to the manner in which Pedersen proposed to observe her religious beliefs or (2) was unable reasonably to accommodate Pedersen's religious beliefs without undue hardship. (*Id.* Pt. II.) [2]

As earlier noted, the jury returned a verdict for Pedersen and against Casey's. They jury members awarded Pedersen "back pay" of $15,000.00 and general damages of $10,000.00. The jury specifically declined to award punitive damages. (Filing 68, Verdict Form.)

## II. Findings of Fact and Conclusions of Law on Title VII Claim Regarding Reinstatement and Front Pay

■ I find and conclude that reinstatement is not a proper remedy, but that front pay in the amount of $7,411.17 should be awarded instead of reinstatement. I arrive at these findings and conclusions for the following reasons.

First, where intentional discrimination has been proven under Title VII, the court may grant equitable relief pursuant to 42 U.S.C. § 2000e-5(g)(1). The statute specifically authorizes the court to grant reinstatement. *Id.* The statute also authorizes the court to grant "any other equitable relief as the court deems appropriate." *Id.* If reinstatement is inappropriate, the court may award "front pay" in lieu of reinstatement. *See, e.g., Hukkanen v. International Union of Operating Engineers, Hoisting & Portable Local No. 101,* 3 F.3d 281, 285–86 (8th Cir.1993) (applying Title VII, and holding that district court did not abuse its discretion in awarding front pay to an employee who was constructively discharged due to sexual harassment where reinstatement was inappropriate) (citing *MacDissi v. Valmont Indus., Inc.,* 856 F.2d 1054, 1060 (8th Cir.1988)).

Second, reinstatement here is not appropriate. When Casey's employed Pedersen for the third and last time, it made it clear that it would never again willingly rehire her. Furthermore, Mrs. Pedersen has testified that she does not want to return to Casey's because, considering her prior treatment, she no longer trusts her previous employer. Also, I observed the parties and their representatives at trial, and I believe the trial itself may have additionally impaired the ability of the parties meaningfully to interact with one another. All these factors collectively (rather than one individually) convince me that requiring Casey's to reinstate Mrs. Pedersen would result in a hostile working environment that would not be productive for Casey's or Pedersen.

Third, although Pedersen is presently a healthy 57–year–old woman who testified that she wanted to work until at least 65, her work history has been sporadic. Until relatively late in life, Pedersen did not work outside the home. More important, before her constructive discharge from Casey's, Casey's had employed Pedersen twice before. Twice, Pedersen voluntarily resigned. On the first occasion, Pedersen worked for about nine months. On the second occasion, she worked for a little more than one year. On the third occasion, Pedersen again worked

---

**2.** At the jury instruction conference, Casey's agreed that Jury Instruction 6 was an accurate statement of the law.

for slightly more than a year before the constructive discharge.

Pedersen's work history with Casey's convinces me that she would not have remained at Casey's until her retirement. Instead, I am persuaded she would likely have voluntarily ended her employment as she had done twice in the past. More specifically, it is not likely that Pedersen would have continued working for Casey's much longer than she had worked for Casey's in the past. Before her constructive discharge, Pedersen had worked at Casey's for roughly three years total during three different periods of employment. Accordingly, given that Pedersen is entitled and will receive "back pay" from April 15, 1995, to September 18, 1997, and giving Pedersen the benefit of the doubt, a period of "front pay" equivalent to one year will serve to make her whole.

Fourth, for the one-year period of "front pay," Pedersen is entitled to $7,411.17. We compute this sum in the following manner:

a. The parties have stipulated that, had Pedersen been working at Casey's on the date of the verdict, she would have earned approximately $6.05 per hour. (Ex. 38.) She was paid at least monthly.

b. There is no non-speculative evidence in the record to establish what, if any, fringe benefits Pedersen would have received had she been working for Casey's on September 19, 1997.

c. During the last full week with Casey's, Pedersen worked 39 hours. (Ex. 1h.) This is representative of her hours of work while employed by Casey's. It is also a fair approximation of what she would have worked in the future had she been employed on the date of the verdict.

d. The evidence shows that Pedersen is presently employed with the Holdrege Chamber of Commerce. She works between 11 and 15 hours a week. They pay her $5.70 per hour. They pay her at least monthly. There is no non-speculative evidence of what, if any, fringe benefits Pedersen receives while working at the Chamber of Commerce.

e. If Pedersen would work 39 hours per week for 50 weeks at $6.05 per hour had she not been constructively discharged, she would have earned approximately $11,-797.50 at Casey's during one year. If she now works 15 hours per week for 50 weeks per year at $5.70 per hour, Pedersen now earns approximately $4,275.00 per year working at the Chamber of Commerce. The difference between those two figures is $7,522.50, and represents Pedersen's lost earnings over a one-year period.

f. Taking into account that Pedersen will be paid a lump sum, and therefore reducing $7,522.50 to present value, Pedersen is entitled to "front pay" of $7,411.17.[3]

■ Fifth, I have considered the argument that Pedersen has not mitigated her "front pay" damages. This argument does not persuade me. There is some suggestion in the evidence that Pedersen did not fully mitigate her damages for a year or so after they discharged her. Nevertheless, the evidence convinces me that even if one accepts in fact lack of full mitigation during the first year, Pedersen after that did everything she reasonably could to mitigate her damages. For example, Pedersen testified without contradiction that she vigorously sought out her present job, and turned what was originally a temporary job into a permanent, although part-time, position.

## III. Findings of Fact and Conclusions of Law on State Law Claim

I find and conclude that Pedersen has proven a violation of Nebraska's law against religious discrimination in the work place, and must be compensated accordingly. I find and conclude that Pedersen is entitled to $25,076.51 as "back pay" and $10,000.00 in compensatory damages. Moreover, for the reasons articulated in Part II of this Memorandum and Order, I also find that reinstatement is inappropriate but Pedersen should receive "front pay" in the sum of $7,411.17. I do not believe Nebraska law authorizes punitive damages, and I therefore decline to

**3.** This is the total present value of Pedersen's future lost earnings assuming Pedersen is paid in a lump sum and further assuming an interest rate of 1.5 percent per annum for one year. · *See Lawyers and Judges Publishing Co.,* Present Value Tables (1996) (factor .9852).

consider that question. The reasons for these findings and conclusions are set forth below.

First, Nebraska law makes religious discrimination an unlawful employment practice. Neb.Rev.Stat. § 48–1104 (Michie 1995) ("It shall be an unlawful employment practice for an employer: To ... discharge ... any individual ... because of such individual's ... religion."). If religious discrimination is proved, "any successful complainant shall be entitled to appropriate relief, including temporary or permanent injunctive relief, general and special damages, reasonable attorney's fees, and costs." Neb.Rev.Stat. § 48–1119(4) (Michie 1995).

■ Second, the parties have assumed, and so shall I, that Nebraska law is identical to federal law regarding (1) the elements of Pedersen's prima facie case, (2) the fact that Casey's defense is an affirmative defense for which it bears the burden of proof, and (3) the elements of Casey's defense. This assumption is well-founded because "the Nebraska Fair Employment Practice Act is patterned after title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1988)" and "it is appropriate to consider federal court decisions construing the federal legislation." *City of Fort Calhoun v. Collins*, 243 Neb. 528, 532, 500 N.W.2d 822, 825 (1993) (citing *Airport Inn, Inc. v. Nebraska Equal Opportunity Comm'n*, 217 Neb. 852, 353 N.W.2d 727 (1984)).

■ Third, the elements of Pedersen's prima facie case are set forth in Jury Instruction 6. (Filing 63, Instruction 6, Pt. I.) Pedersen must prove three things to prove religious discrimination. *See Brown v. General Motors Corp.*, 601 F.2d 956, 959 (8th Cir.1979) (setting forth elements of prima facie case of religious discrimination when an employee is discharged).

Pedersen must prove that she had a bona fide belief that working on Easter Sunday was contrary to her religious beliefs. Id. Next, Pedersen must prove that she informed Casey's about the conflict between compliance with an employment requirement and her religious beliefs. *Id.* Finally, since Pedersen did not claim that they fired her,

she must prove a "constructive discharge." *See Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit* 5.93, at 172 (1995) (setting forth elements of constructive discharge) (citing, among other cases, *Hukkanen v. International Union of Operating Engineers, Hoisting & Portable Local No. 101*, 3 F.3d 281, 284 (8th Cir.1993)). Regarding "constructive discharge," Pedersen must prove that (a) Casey's made her working conditions intolerable by requiring her to work on Easter Sunday, (b) Pedersen's religion was a motivating factor in Casey's action, and (c) Pedersen's failure to return to work was a reasonably foreseeable result of Casey's action. *Id.*

As for Pedersen's burden to prove that her religion was a "motivating factor" in Casey's action, both parties agreed that Jury Instruction 6 accurately described what a "motivating factor" was. The instruction told the jury that the "plaintiff is not required to prove that religion was the sole motivation or even the primary motivation," but the plaintiff is "required to prove that religion played a part in the defendant's action even though other factors may also have motivated the defendant." (Filing 63, Instruction 6, Pt. I.) *See also Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit* 5.01, at 89 n. 6 (citing *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1101 (8th Cir.1988)). In addition, after a question by the jury, we told the jury, with the agreement of the parties, that "the motivating factor may be direct or indirect so long as it moved the defendant towards its decision." (Filing 66, Answer to Jury's First Question.)

■ Fourth, Casey's has a defense to liability if it (1) offered a reasonable accommodation to the manner in which Pedersen proposed to observe her religious beliefs or (2) was unable reasonably to accommodate Pedersen's religious beliefs without undue hardship. *See* 42 U.S.C. § 2000e(j) ("The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business."). The burden to prove

this defense is on Casey's. *See Brown*, 601 F.2d at 961 (stating that General Motors, the defendant, had the "burden of proving undue hardship").[4]

■ Sixth, the evidence overwhelmingly establishes that Pedersen held a sincere and strong belief that working on Easter Sunday violated a fundamental aspect of her Christian religious convictions. As she stated in a letter to the manager of Casey's store, Easter is "the most important day of praise & worship in the life of a born[-]again Christian" and "it's so against my religious belief[s] to work on this day." (Ex. 8.)

Seventh, Pedersen informed Casey's about the conflict between compliance with the employment requirement that she work on Easter Sunday and her religious beliefs. With the agreement of Tammy Thorell, who was then managing Casey's store, Pedersen worked on Thanksgiving and New Year's in exchange for not working on Christmas in 1994 and Easter in 1995. Accordingly, Thorell marked Pedersen "off" the schedule for Christmas and Easter. Moreover, after learning that the new manager in April 1995 had changed the schedule, Pedersen wrote the manager and clearly informed the manager of her strong religious objection to working on Easter. (Ex. 8.) Then Pedersen also gave · the new manager a copy of a pamphlet ostensibly prepared by the Nebraska Department of Labor setting forth the "religious accommodation" provisions of Title VII. (*Id.*)

Eighth, Pedersen was constructively discharged. Despite knowing that Pedersen could not work on Easter without violating sincere and strong religious beliefs, Radonda Veltkamp Barton, who was the new manager, scheduled Pedersen to work. This was an intolerable working condition to Pedersen, and Barton knew it.

Moreover, I am convinced that Pedersen's religion played a part in Barton's, and thus Casey's, action.[5] Barton resented Pedersen for insisting that she be given the day off for religious reasons, and Barton intended to punish Pedersen by insisting that Pedersen choose her job or her god. I am so persuaded, for among other reasons, because:

(1) Barton was obligated to work Easter Sunday and since she was salaried, Barton would not be additionally compensated for working the holiday. This upset Barton.

(2) Brad Pahl, the area supervisor for Casey's, admitted on cross-examination that he would have accommodated Mrs. Pedersen, especially considering the fact that Mrs. Pedersen was an outstanding employee.

(3) Tammy Thorell, the former manager, testified that she had enthusiastically agreed to an accommodation with Pedersen which required Pedersen to work important, but secular, holidays in exchange for not working on Christmas and Easter.

(4) Despite Casey's attempt to prove otherwise, Barton did not need to schedule Mrs. Pedersen to work on Easter Sunday, especially .since (a) the store was fully staffed without scheduling Pedersen, and (b) even if the store was not fully staffed, Barton did not try to call or schedule Tom Watenpaugh, who was always willing to work.

Barton claimed to be a "born-again" Christian with no motive to discriminate against Pedersen. However, inconsistencies [6], weak excuses [7], and a checkered employment histo-

---

4. While the Nebraska Fair Employment Practice Act does not expressly set forth this affirmative defense to liability, we conclude that such a defense is available under Nebraska law since, as indicated in the text above, the Nebraska Fair Employment Practice Act is patterned after Title VII and Title VII provides the defense.

5. June O'Donnell, an area supervisor for Casey's, essentially ratified Barton's action to schedule Pedersen to work on Easter when she told Barton "to do what she had to do."

6. Notwithstanding her claim to be "born-again," Barton admitted on cross-examination that upon moving to Holdrege she did not attend a church for six months.

7. Pedersen was a full-time employee. Part-time employees were specifically employed to substitute for full-time employees by working eight-hour (or more) shifts on holidays,. weekends, and when needed. Barton scheduled two married part-time employees to work short shifts on Easter. When asked why Barton did not insist that

ry with Casey's[8] badly damaged Barton's credibility. For example, Barton testified that she thought she had discussed Pedersen's request for accommodation with Brad Pahl, Casey's area supervisor, but he did not remember having such a conversation. To the contrary, and as indicated above, Pahl stated that he would have accommodated Pedersen had he known of the request.

Still further, it was apparent to Barton that if she scheduled Pedersen to work on Easter, such a decision would force Pedersen to quit. In her letter to Barton protesting the scheduling, Pedersen stated that if she was scheduled on Easter she would be forced to quit. (Ex. 8.) A paper schedule, maintained by Barton, confirmed that Barton considered the Saturday before Easter as Pedersen's "last day." (Ex. 1h.)

■ Ninth, Casey's did not convince me either that it offered a reasonable accommodation or that it could not do so without undue hardship. Considering each part of this alternative defense separately is useful.

As for the first alternative, if Casey's offered Pedersen a reasonable accommodation, then we cannot say that the employer discriminated against Pedersen because of her religion. *See Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 68, 107 S.Ct. 367, 371–72, 93 L.Ed.2d 305 (1986) ("[A]ny reasonable accommodation by the employer is sufficient to meet its accommodation obligation" and when proven "the statutory inquiry is at an end."). In fact, an employer need not accept an employee's specific request if a reasonable alternative exists which the employer will grant. *Id.* 68–69, 107 S.Ct. at 371–72.

Casey's accurately observes that Pedersen's employment agreement (ex. 25 (last two pages)) exempted her from working Sunday mornings, but at no other time. From this premise, Casey's argues that it offered Pedersen a "reasonable accommodation" when it required her to work the evening shift on Easter. This assertion does not persuade me.

Casey's agrees[9] that "an accommodation that requires the employee substantially to violate his or her religious beliefs is not a reasonable accommodation." (Filing 63, Instruction 6, Pt. II.C.) *See, e.g., Wright v. Runyon,* 2 F.3d 214, 217 (7th Cir.1993) ("A reasonable accommodation of an employee's religion is one that 'eliminates the conflict between employment requirements and religious practices . . . .'") (quoting *Ansonia Bd. of Educ.,* 479 U.S. at 70, 107 S.Ct. at 372–73), *cert. denied,* 510 U.S. 1121, 114 S.Ct. 1077, 127 L.Ed.2d 394 (1994). Therefore, it is from this perspective that I must judge Casey's "reasonable accommodation" argument.

Casey's knew that the entirety of Easter was of paramount religious significance to Pedersen, and was unlike a normal Sunday. For example, Tammy Thorell, the previous manager, agreed to an arrangement for Pedersen to work secular holidays, so that Pedersen could take off the entire days of Christmas and Easter. Still further, the evidence is undisputed that Pedersen regularly attended church services both in the morning and in the evening on Easter Sunday.

By requiring Pedersen to work Easter evening, Casey's was requiring Pedersen not only to break her religious convictions about laboring on Easter, but Casey's was also requiring her to forego an Easter worship service that she regularly attended. Consequently, the "evening" accommodation was not reasonable, as it forced Pedersen substantially to violate her religious beliefs.

Casey's fall-back argument is that it was unable to offer Pedersen a reasonable accommodation because any accommodation that would satisfy Pedersen's religious needs would have also caused Casey's to suffer an undue burden. *See Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 84, 97 S.Ct. 2264, 2276–77, 53 L.Ed.2d 113 (1977) ("To

---

the part-timers work a normal full shift, Barton stated that she wanted to accommodate their request to visit one of their children.

**8.** After working for Casey's for a short time, Barton resigned as a manager. Her resignation was given soon after the Pedersen incident. She then took a job as a regular employee. Some months later, Barton left the company when she was accused of "improper performance."

**9.** As earlier noted, Casey's accepted Jury Instruction 6, and agreed that it was an accurate statement of the law.

require TWA to bear more than a *de minimis* cost in order to give Hardison Saturdays off is an undue hardship."). Again, Casey's agreed what an "undue burden" meant:

[T]he employer is not required to incur a cost, loss of efficiency, discontent by other employees, or scheduling difficulty regarding other employees unless such cost, loss, discontent, or difficulty is minimal. In other words, the law does not require an employer to accommodate an employee's religious beliefs if the result of such an accommodation is a more than minimal burden on the employer. Nevertheless, if an accommodation can be made by the employer that only burdens the employer in a minimal way, then the employer must offer the accommodation in order to take advantage of this defense. In this regard, in order for a burden to be undue (more than minimal), it must be real rather than speculative or merely conceivable or hypothetical.

(Filing 63, Instruction 6, Pt. II.A.)[10]

The Court of Appeals has clearly stated that no undue burden exists unless the employer establishes that the asserted burden is " 'real' rather than 'speculative.' " *Brown v. Polk County, Iowa,* 61 F.3d 650, 655 (8th Cir.1995) (en banc) (quoting *Cook v. Chrysler Corp.,* 981 F.2d 336, 339 (8th Cir.1992), *cert. denied,* 508 U.S. 973, 113 S.Ct. 2963, 125 L.Ed.2d 663 (1993)), *cert. denied,* — U.S. ——, 116 S.Ct. 1042, 134 L.Ed.2d 189 (1996). For example, the Court of Appeals has instructed us that to excuse a failure to accommodate an employee's religious activities on the grounds of employee discontent, the employer must present more than proof of some

fellow worker's grumbling. *Id.* In such a circumstance, the employer must show actual imposition on coworkers or a disruption of the work routine. *Id.*

Casey's claim is ultimately premised upon the assertion that it needed Pedersen to work on Easter. Yet the evidence does not bear out this assertion. On the contrary, Casey's "undue burden" argument was not "real," but only "speculative."[11]

For example, given the staff that Barton scheduled to work on Easter, they could have properly operated the store without Pedersen if the other employees scheduled to work that day had been told to work regular shifts.[12] Furthermore, the fact that Pahl (the area supervisor) would have accommodated Pedersen coupled with the fact that Thorell (the former manager) did in fact accommodate Pedersen is overwhelming evidence that Barton could easily have accommodated Pedersen without any burden, "undue" or otherwise.

Tenth, Pedersen has amply proven that Casey's damaged her in three ways; that is, Pedersen suffered (1) a loss of "back pay," (2) emotional suffering, and (3) a loss of "front pay." Addressing these elements separately is appropriate.

■ As to "back pay," the parties stipulated that Pedersen would have earned $29,654.00 if she had worked from April 16, 1995, to the date the case was submitted. (Ex. 38.) The parties also stipulated that during this time Pedersen had earned $4,577.49. (*Id.*) By applying for many jobs in Kearney and Holdrege, Nebraska, Pedersen persuades me that she fully mitigated[13] her damages. *See*

---

**10.** *See also* 29 C.F.R. § 1605.2 (1997) (EEOC guidelines on discrimination because of religion; reasonable accommodation without undue hardship); 41 C.F.R. § 60–50.3 (1997) (Office of Federal Contract Compliance Programs guidelines on discrimination because of religion; accommodations to religious observance and practice).

**11.** At times, the "speculative" nature of Casey's claim was stunning. Casey's suggested to the jury that there was a cash register shortage on Easter and this shortage proved that not having Pedersen at work was a burden. However, during closing argument, Casey's was forced to admit that it could not prove that any shortage occurred on Easter.

**12.** To the extent that Casey's relies upon the "whining" (to use Barton's words) of other employees, I reject this as mere "grumbling." *Brown,* 61 F.3d at 655.

**13.** There was evidence in the record from which a reasonable jury could have concluded that Pedersen did not fully mitigate her damages. Thus, the jury's award of $15,000.00 in "back pay" is not improper. However, as the fact-finder on the state law claim, I am not persuaded that Pedersen failed to fully mitigate her damages.

*Newhouse*, 110 F.3d at 641 (" 'All that is required by law is an honest, good faith effort.' ") (quoting *Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1065 (8th Cir. 1988)). As a result, Pedersen is entitled to the difference between what she would have earned and what she in fact earned; that is, Pedersen is entitled to $25,076.51 as "back pay."

Regarding emotional suffering and related damages, Pedersen and her husband testified that she suffered emotionally after her constructive discharge. For example, she gained 75 pounds during the year following her discharge. I agree with the jury that $10,000.00 will adequately compensate Pedersen for her loss.

With respect to "front pay," for the reasons stated in Part II of this Memorandum and Order, Pedersen is entitled to an award. Consequently, I will award Pedersen "front pay" in the sum of $7,411.17.

Finally, Pedersen is not entitled to punitive damages under Nebraska law. *Enron Corp. v. Lawyers Title Ins. Corp.*, 940 F.2d 307, 313 (8th Cir.1991) (" '[P]unitive, vindictive, or exemplary damages contravene Neb. Const. art. VII, § 5, and thus are not allowed in this jurisdiction.' ") (quoting *Distinctive Printing & Packaging Co. v. Cox*, 232 Neb. 846, 857, 443 N.W.2d 566, 574 (1989)) (footnote omitted). Therefore, I decline to consider Pedersen's request for punitive damages.

Accordingly,

IT IS ORDERED that:

1. Pedersen is entitled to "front pay" rather than reinstatement on the Title VII claim and she is entitled to $7,411.17.

2. Pedersen has proven religious discrimination under Nebraska law, and is entitled to "back pay" of $25,076.51, compensatory damages of $10,000.00, and "front pay" of $7,411.17.

3. Pedersen has 10 days to submit her application for attorney fees, affidavits, and supporting brief, and Casey's has 10 days to respond.

4. Judgment will be withheld until further order of this court.